## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **JAMES H. BANKSTON, JR.;** | ) | |
| **RALPH B. PFEIFFER, JR.;** | ) | |
| **MARK JOHNSTON;** | ) | |
| **TERESA K. THORNE;** | ) | |
| **and GASP, INC.,** | ) | **Case No. 2:21-CV-00469-SMD** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **ALABAMA PUBLIC SERVICE** | ) | |
| **COMMISSION; TWINKLE** | ) | |
| **ANDRESS CAVANAUGH, in her** | ) | |
| **official capacity as President of the** | ) | |
| **Alabama Public Service Commission;** | ) | |
| **JEREMY H. ODEN, in his official** | ) | |
| **capacity as Commissioner of the** | ) | |
| **Alabama Public Service Commission;** | ) | |
| **and CHRIS "CHIP" BEEKER, in his** | ) | |
| **official capacity as Commissioner of the** | ) | |
| **Alabama Public Service Commission,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## BRIEF IN SUPPORT OF MOTION TO DISMISS

/s/ Luther D. Bentley IV

Luther D. Bentley IV (ASB-9981-R48B)
V. Chad Mason, Jr. (ASB-1331-Y21E)
Attorneys for Defendants
100 N. Union Street
Montgomery, Alabama 36104
(334) 242-5200
luke.bentley@psc.alabama.gov
chad.mason@psc.alabama.gov

## Table of Contents

**Introduction** ............................................................................................1

**Background** ..............................................................................................1

    A.    PURPA Section 210: Purpose and Mandates.......................................1

    B.    FERC Regulations Implementing PURPA ........................................2

    C.    Alabama Public Service Commission's Implementation of PURPA ............................................................................................3

    D.    Corresponding Proceedings before Alabama Public Service Commission ......................................................................................8

    E.    PURPA Section 210: Enforcement ....................................................9

    F.    Proceedings before Federal Energy Regulatory Commission ...........12

    G.    Current Complaint .........................................................................12

**Legal Standards for Dismissal** .............................................................13

**Arguments**..............................................................................................15

    A.    Plaintiffs bring As-Applied Claims over which Court has No Jurisdiction ..................................................................................15

    B.    Count 2 Fails to State a Claim for Which Relief Can Be Granted ..........................................................................................21

    C.    Plaintiff GASP Lacks Standing to Bring Claim Under Section 210 ................................................................................................22

**Conclusion**..............................................................................................23

## Introduction

Plaintiffs James H. Bankston, Jr.; Ralph B. Pfeifer, Jr.; Mark Johnston; Teresa K. Thorne; and GASP, Inc. ("Plaintiffs") bring this enforcement action under Section 210 of the Public Utility Regulatory Policies Act ("PURPA") against the Alabama Public Service Commission ("APSC").  Plaintiffs allege that the APSC's approved rates for the sale of electricity to customers that require back-up power is inconsistent with PURPA and Federal Energy Regulatory Commission ("FERC") regulations.  Plaintiffs seek declaratory relief regarding the alleged violations and an order requiring the APSC to change the applicable rates.  Plaintiffs' Amended Complaint should be dismissed because Plaintiffs plead claims over which this Court lacks jurisdiction.  Under PURPA, this Court only has jurisdiction over claims that a state's implementation of PURPA is unlawful.  This Court does not have jurisdiction over "as-applied" claims, like Plaintiffs' claims here.  In addition, Plaintiffs' Count 2 fails to state a claim for which relief can be granted and Plaintiff GASP should be dismissed because it does not meet the PURPA standing requirements.

## Background

### A.    PURPA Section 210: Purpose and Mandates

Congress enacted PURPA in 1978 in response to a nationwide energy crisis. *F.E.R.C. v. Mississippi*, 456 U.S. 742, 745 (1982).  Section 210 of PURPA served

"to lessen the United States' reliance on oil and natural gas by encouraging the development of energy-efficient cogeneration and small power production facilities" (referred to as qualifying facilities or QFs). *Allco Renewable Energy Ltd. v. Massachusetts Elec. Co.*, 875 F.3d 64, 67 (1st Cir. 2017) (referencing *F.E.R.C. v. Mississippi*, 456 U.S. 742, 745 (1982)).

At the time of PURPA's enactment, Congress found that traditional electric utilities were reluctant to transact with nontraditional facilities, creating an obstacle to their development. *Id*. Section 210 sought to address this obstacle by directing FERC to promulgate rules, within a year of the enactment of PURPA, to encourage QFs and require electric utilities to: 1) sell electric energy to QFs and 2) purchase energy from QFs. 16 U.S.C. § 824a-3(a). Section 210(c) specifies that the rates for sales to QFs "shall be just and reasonable and in the public interest" and shall not discriminate against the QF. 16 U.S.C. § 824a-3(c).

**B.   FERC Regulations Implementing PURPA**

In 1980, FERC promulgated regulations implementing PURPA. *Small Power Production and Cogeneration Facilities; Regulations Implementing Section 210 of the Public Utility Regulatory Policies Act of 1978*, 45 Fed. Reg. 12214 (Feb. 25, 1980) ("Order 69"). FERC's rules for sales to QFs echo PURPA's mandate that rates be just and reasonable and nondiscriminatory. 18 C.F.R. § 292.305(a)(1). FERC's rules also state that "[r]ates for sales which are based on accurate data and

consistent systemwide costing principles shall not be considered to discriminate against any [QF] to the extent that such rates apply to the utility's other customers with similar load or other cost-related characteristics."  18 C.F.R. § 292.305(a)(2). FERC requires that electric utilities provide back-up power upon the request of a QF and that the rates for the sale of back-up power "[s]hall not be based upon an assumption (unless supported by factual data) that forced outages or other reductions in electric output by all [QFs] on an electric utility's system will occur simultaneously, or during the system peak, or both."  18 C.F.R. § 292.305(b) and (c).

## C.    Alabama Public Service Commission's Implementation of PURPA

In addition to requiring FERC to promulgate rules to implement PURPA, Congress also required state regulatory authorities to implement the FERC rules for each utility for which it has ratemaking authority within one year of FERC's promulgation of its regulations.  16 U.S.C. § 824a-3(f).  FERC addressed the state implementation in its rulemaking order, stating it did not require that state regulatory authorities adopt FERC regulations verbatim.  Order 69, 45 Fed. Reg. 12214, 12230-31 (Feb. 25, 1980).  Rather, FERC stated that it would "afford the State regulatory authorities… great latitude in determining the manner of implementation of [FERC's] rules, provided that the manner chosen is reasonably designed to implement the requirements of [FERC's rules]."  *Id.*    FERC stated that "implementation [of FERC's rules by state regulatory authorities] may be

3

accomplished by the issuance of regulations, on a case-by-case basis, or by any other means reasonably designed to give effect to [FERC's] rules." *Id*. at 12216.

In 1983, FERC issued a statement of policy to "clarify [its] point of view of [its] appropriate place in an apparently ambiguous statutory enforcement scheme." *Policy Statement Regarding the Commission's Enforcement Role Under Section 210 of the Public Utility Regulatory Policies Act of 1978*, 23 FERC 61304, 1983 WL 39627 (1983). In that policy statement, FERC recognized that a state could also meet its implementation requirement through "enactment of laws." *Id*. at 61644.

Alabama's implementation of PURPA Section 210 includes: 1) the enactment of laws; 2) the establishment of a rate scheme, including tariffs and rules; and 3) the adoption of traditional ratemaking procedures.

### 1. Enactment of Laws

In 1983, the Alabama Legislature incorporated FERC's PURPA rules (18 CFR §§ 292.101 through 292.602) into law. Ala. Code § 37-12-3. In addition to incorporating FERC regulations into Alabama law, the Legislature directed the APSC to "take all necessary steps to implement the provisions of [Ala. Code §§ 37-12-1 through 37-12-5] as it affects utilities already subject to the jurisdiction of the [APSC] and to promulgate rules and regulations consistent with the provisions hereof." Ala. Code § 37-12-4.

### 2. Establishment of a Rate Scheme (Tariffs and Rules)

Prior to the Alabama Legislature's enactment of laws to implement Section 210, the APSC had already acted.  As directed by PURPA, on October 1, 1980, the APSC initiated a proceeding regarding Section 210's requirement that Alabama Power sell electricity to and buy electricity from QFs at just and reasonable rates.[1] Subsequent to this notice and a public hearing, the APSC approved Rate PAE (Purchase of Alternative Energy) proposed by Alabama Power.[2]

The initial Rate PAE included rates for both purchases of electricity from QFs and sales of electricity to QFs, including back-up power (referred to as "standby service") for QFs of 100 kW or less.  Exhibit A-2.  Rate PAE stated that standby service "shall be provided to a Customer with a demand of less than 5 KW under the rate schedule applicable for that class Customer."  *Id*.  Rate PAE also stated that standby service "shall be provided to a Customer with a demand of 5 KW or greater under provisions of Rate Rider RSU."  *Id*.

After the approval of Rate PAE and its associated rules, the APSC initiated proceedings to consider a rate plan for facilities 100 kW or greater.[3]  These

---

[1] Declaration of Secretary Walter L. Thomas, Jr., pursuant to 28 U.S.C. § 1746, attached hereto as Exhibit A and APSC Notice attached to Exhibit A as Exhibit A-1.

[2] APSC Orders approving Rate PAE and a related Alabama Power filing are attached to Exhibit A as Exhibit A-2.

[3] FERC required standard rates for QFs with a design capacity of 100 kW or less.  But, for QFs with a design capacity of more than 100 kW, FERC stated that standard rates "may be put into effect."  Order 69 at 12235.

proceedings resulted in the adoption of Rate Rider RGB and associated rules in 1988.[4]  Subsequent to the approval of Rate Rider RGB, Alabama Power withdrew Rate RSU and modified Rate PAE to reference Rate Rider RGB for back-up power service for customers with a demand of 5 kW or greater.[5]  In 2013, the APSC approved revisions to Rate Rider RGB to include a capacity reservation charge (sometimes referred to as a "back-up" service charge) of $5.00 per kW of capacity of the customer's on-site generation.  Doc. 12 at ¶¶ 26, 27.  Rate Rider RGB applies to any "customers with non-emergency on-site generation interconnected and operating in parallel with [Alabama Power's] electrical system."  *Id*. at ¶ 25.

The APSC has revised both Rate Rider RGB and Rate PAE several times since the original implementation in the 1980s.  As of this filing, Rate Rider RGB (6th Revision) and Rate PAE (42nd Revision) are the effective rates.[6]

### 3. Adoption of Traditional Rate Making Procedures

During the proceeding to consider the proposed Rate PAE, the APSC applied Alabama's statutory rate-setting processes as an element of the implementation of Section 210 of PURPA.[7]  This is consistent with FERC's regulations which

---

[4] APSC Order approving Rate Rider RGB is attached to Exhibit A as Exhibit A-3.
[5] APSC Order deleting Rate Rider RSU is attached to Exhibit A as Exhibit A-4.
[6] Alabama Power's current rates and rules are available at https://www.alabamapower.com.
[7] The APSC made it clear that it adopted these traditional ratemaking procedures for PURPA rates when, on December 30, 1980, the APSC suspended the effective date of the proposed Rate PAE through July 9, 1981, pursuant to Ala. Code § 37-1-81.  APSC Order suspending the proposed Rate PAE is attached to Exhibit A as Exhibit A-5.

"contemplate[] formulation of rates [for sales to QFs] on the basis of traditional ratemaking."  Order 69 at 12228.  The statutory rate-setting processes include: 1) a requirement that rates be reasonable and just (Ala. Code § 37-1-80); 2) a process for the filing of new rate schedules (Ala. Code § 37-1-81(a)); 3) a structure for the APSC's investigation of proposed rates (Ala. Code § 37-1-81(b)); 4) the setting of hearings if the APSC investigates a proposed rate (Ala. Code § 37-1-85); 5) notice requirements for investigations (Ala. Code § 37-1-86); 6) the standard that any "affected" person may intervene in the proceedings (Ala. Code § 37-1-87); 7) the right for all parties to be heard, through themselves or counsel (Ala. Code § 37-1-88); and 8) a process for taking testimony (Ala. Code § 37-1-89).  The inclusion of these processes as part of PURPA implementation created a mechanism for the APSC to consider the evidence and set rates that are "just and reasonable and in the public interest" (*see* 16 U.S.C. § 824a-3(c)); nondiscriminatory (*see* 18 C.F.R. § 292.305(a)(1)); and based on accurate information (*see* 18 C.F.R. § 292.305(a)(2)).[8]

The APSC's utilization of the traditional ratemaking process is a critical element of the state's implementation of PURPA Section 210.  It is this procedural element of the implementation that promotes a comprehensive review of the evidentiary basis for the setting of rates, through APSC Staff investigation,

---

[8] Following the implementation of the rate-setting procedures for Rate PAE in 1980, the APSC has continued to utilize these procedures for the consideration of all rates related to PURPA.

participation by intervenors with diverse perspectives, and a public hearing.  This element ensures just and reasonable rates, both to comply with PURPA and Alabama law.

**D.     Corresponding Proceedings before Alabama Public Service Commission**

On or about April 26, 2018, some of the Plaintiffs in this case (Bankston, Pfeiffer, and GASP) filed a complaint against Alabama Power with the APSC pursuant to Alabama Code § 37-1-83.  Doc. 12 at ¶ 33.  That complaint alleged that Rate Rider RGB (5th Revision) was "unfair, unreasonable, unjust, discriminatory, contrary to the public interest and otherwise unlawful."  *Id.*  This claim evoked state law, although the complaint did reference PURPA.  Complaint with APSC ¶¶ 43, 46.  Shortly after, on June 15, 2018, Alabama Power filed for modifications to Rate Rider RGB.  Doc. 12 at ¶ 34.

In response to the complaint and the rate filing, the APSC initiated proceedings to address the rate rider that was the subject of both filings.  The APSC held a formal hearing on November 21, 2019 in which the witnesses for the parties were made available for cross-examination.  Doc. 12 at ¶ 35.  At the conclusion of the hearing, the parties were directed to file post-hearing briefs in the form of proposed orders.  *See* Doc. 12 at ¶ 42.  On October 16, 2020, the APSC issued an order approving Alabama Power's proposed modifications to Rate Rider RGB and denying the complaint regarding Rate Rider RGB.  Doc. 12 at ¶ 43.

## E.    PURPA Section 210: Enforcement

Congress provides for the enforcement of Section 210 through three "comprehensive and complicated statutory provisions that substantially limit federal jurisdiction." *Greensboro Lumber Co. v. Georgia Power Co.*, 643 F. Supp. 1345, 1372 (N.D. Ga. 1986), *aff'd*, 844 F.2d 1538 (11th Cir. 1988).  Section 210(f) requires state regulators to implement FERC regulations.  16 U.S.C. § 824a-3.  Section 210(g) provides for state judicial review "respecting any proceeding conducted by a State regulatory authority… for purposes of implementing [FERC's PURPA regulations]." *Id*.  Section 210(h) gives FERC, or a QF when FERC declines to act within 60 days, the ability to bring an action in federal district court.  *Id*.  Whether an enforcement action proceeds in state or federal court depends on the type of claim. FERC and the Courts have weighed in on the jurisdictional line between state claims and federal claims under PURPA.

In 1983, FERC issued a policy statement to clarify its role in "an apparently ambiguous statutory enforcement scheme."  *Pol'y Statement Regarding the Commission's Enf't Role Under Section 210 of the Pub. Util. Regul. Pol'ys Act of 1978*, 23 FERC ¶ 61304, 61643 (1983).  FERC indicated that Section 210(g), which provides for state judicial review, is the "primary enforcement authority by which an aggrieved person may challenge the *application* of a rule or rules promulgated by a State regulatory authority or nonregulated electric utility." *Id*. at 61645 (emphasis

in original). FERC recognized that "once the State regulatory authorities… have appropriately implemented [FERC's] regulations, [FERC's] role is limited regarding questions of the proper application of these rules." *Id*. FERC indicated that an allegation involving the application of a state-established rule properly lies before a state judicial forum. *Id*. In contrast, FERC stated that it has the authority under Section 210(h) to commence an action to require a state regulator to *implement* FERC's regulations. *Id*. at 61644 (emphasis added).

While FERC provided some guidance on whether an enforcement action proceeds in state or federal court, "[d]emarcating the precise boundaries of state versus federal jurisdiction under Section 210 was left to the courts." *Solar v. City of Farmington*, 2 F.4th 1285, 1288 (10th Cir. 2021). The United States District Court for the Northern District of Georgia found that federal courts lack subject matter jurisdiction over as-applied claims and that PURPA limits federal jurisdiction to claims related to failure to "devise an implementation plan, after notice and opportunity for public hearing, that is consistent on its face with FERC's regulations." *Greensboro Lumber Co. v. Georgia Power Co.*, 643 F. Supp. 1345, 1374 (N.D. Ga. 1986), *aff'd*, 844 F.2d 1538 (11th Cir. 1988). This "as-applied" vs. "as-implemented" jurisdictional distinction has become the most prominent paradigm, "adopted by the First, Fifth, and Eleventh Circuits." *Solar v. City of*

*Farmington*, 2 F.4th 1285, 1288 (10th Cir. 2021).[9]   As-applied claims "revolve around allegations that a utility's implementation plan is unlawful as applied to the individual petitioner" and only state courts have jurisdiction of those claims under Section 210(g). *Id.*  In contrast, "[a]s-implemented claims involve a contention that a utility failed to implement a FERC rule, rendering its regulations or procedures facially illegitimate," and federal courts have jurisdiction of these claims pursuant to Section 210(h)(2). *Id.*

*Greensboro Lumber* held that the federal district court did not have jurisdiction over a QF's claim that it was subject to unfair charges for back-up power service.  643 F. Supp. at 1374, *aff'd*, 844 F.2d 1538 (11th Cir. 1988).  In *Greensboro Lumber*, the QF challenged the defendants' implementation plans, claiming that the back-up power rates were not just and reasonable, violating FERC's regulations, particularly 18 C.F.R. § 292.305.  *Id.*  "The district court concluded that this claim was properly regarded as a challenge to the application of an implemented plan, and not a challenge to the implementation of the plan itself; therefore, the court concluded, jurisdiction did not lie in federal court."  *Massachusetts Inst. of Tech. v. Massachusetts Dep't of Pub. Utilities*, 941 F. Supp. 233, 238 (D. Mass. 1996)

---

[9] Citing *Allco Renewable Energy Ltd. v. Mass. Elec. Co.*, 875 F.3d 64, 67-68 (1st Cir. 2017); *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 388 (5th Cir. 2014); *Greensboro Lumber Co. v. Ga. Power Co.*, 844 F.2d 1538, 1542 (11th Cir. 1988).

(discussing *Greensboro Lumber*).  Accordingly, the nature of the claim determines whether a PURPA enforcement action belongs in state court or federal court.

**F.      Proceedings before Federal Energy Regulatory Commission**

On March 31, 2021, presumably under the assumption that they were making an implementation claim, Plaintiffs filed a petition for enforcement against the APSC with FERC pursuant to Section 210(h)(2)(B) of PURPA.  Doc. 12 at Ex. A. In its petition, Plaintiffs claimed that APSC failed to implement PURPA and related FERC regulations requiring the non-discriminatory sale of electricity to QFs.  *Id*.

On June 1, 2021, FERC issued a Notice of Intent Not to Act.  Doc. 12 at Ex. B.  In this notice, FERC declined to initiate an enforcement action against the APSC and stated that Plaintiffs "may themselves bring an enforcement action against the Alabama Commission in the appropriate court."  *Id*. at 2.  On June 2, 2021, the Chairman of FERC, Richard Glick, and Commissioner Allison Clements published a joint concurrence with FERC's Notice of Intent Not to Act and expressed concerns about the APSC's compliance with PURPA Section 210.  *See* Doc. 12 at Ex. C.

**G.      Current Complaint**

On July 19, 2021, Plaintiffs served the initial Complaint seeking declaratory relief against the APSC, asserting the same alleged errors which formed the basis of its petition to FERC.  On August 5, 2021, Plaintiffs served the APSC with the Amended Complaint, adding the President of the Commission and the Associate

Commissioners as defendants.  In the Amended Complaint, Plaintiffs allege that the APSC approval of the back-up service charges in Rate Rider RGB constitutes failure to implement 18 C.F.R. § 292.305(a) (Count 1); 18 C.F.R. § 292.305(b) (Count 2); and 18 C.F.R. § 292.305(c) (Count 3).  Doc. 12 at ¶¶ 44-91.  Plaintiffs seek declaratory relief regarding the alleged violations and an order requiring the APSC to change the applicable rates to comply with PURPA and FERC regulations.  *Id.* at ¶¶ A-J.

## Legal Standards for Dismissal

"A federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of the proceedings, and facts outside of the pleadings may be considered as part of that determination." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1332 (11th Cir. 2001) (referencing *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir.2001).  "A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction, and Rule 12(b)(1) permits a facial or factual attack.  *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir.2007).  "[W]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and.... satisfy itself as to the existence of its power to hear the case." *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).  "The

Court may consider matters outside the pleadings in ruling on a motion under Rule 12(b)(1)." *Grissom v. United States*, No. 7:19-CV-01884-LSC, 2020 WL 1083213, at *2 (N.D. Ala. Mar. 5, 2020) (referencing *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991). "The burden of proof on a Rule 12(b)(1) motion is on the party averring jurisdiction." *Id.* at *1–2 (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)).

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint." *Trotter v. Unisys Governmental Servs., Inc.*, No. 2:09-CV-396-WKW, 2009 WL 10685168, at *1 (M.D. Ala. Dec. 9, 2009) (internal citation removed). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully" and more than labels, conclusions, "formulaic recitation of the elements," or "naked assertions." *Id.* (citing *Twombly*, 550 U.S. at 555–57). On a motion to dismiss, a court accepts the Plaintiffs' factual allegations as true. *Id.* at 678. "However, conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Airlines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

**Arguments**

**A.**     **Plaintiffs bring As-Applied Claims over which Court has No Jurisdiction**

Section 210(h)(2)(B) of PURPA limits federal court jurisdiction to claims that state authorities have failed to comply with their obligation under Section 210(f) of PURPA to devise an implementation plan, after notice and opportunity for public hearing, that is consistent on its face with FERC's regulations. *Greensboro Lumber Co. v. Georgia Power Co.*, 643 F. Supp. 1345, 1374 (N.D. Ga. 1986), *aff'd*, 844 F.2d 1538 (11th Cir. 1988).[10]  Here, Plaintiffs make claims that the APSC "has failed to adhere to its own implementation plan in its dealings with a particular [QF]" and those claims "must be brought in state court." *See Id*.

The following describes why the three counts in the Amended Complaint are "as-applied" claims that cannot be brought in federal court and should be dismissed for lack of subject matter jurisdiction.  This discussion takes the counts out of order, addressing Count 2 first because it is a "pure" as-applied claim specific to individual Plaintiffs. *See Massachusetts Inst. of Tech. v. Massachusetts Dep't of Pub. Utilities*, 941 F. Supp. 233, 237 (D. Mass. 1996) (referring to *Greensboro Lumber* as a "pure" as-applied claim outside of federal court jurisdiction).  The jurisdictional analysis

---

[10] In *Greensboro Lumber*, the Court cited this standard for an unregulated utility rather than a state authority, but the standard in Section 2010(f) is the same for both.

then turns to Counts 1 and Count 3 which are as-applied claims because the complained of rate could also apply to customers who are not QFs. *See Id.* at 238.

### 1. Count 2: 18 C.F.R. § 292.305(b)

Count 2 of the Amended Complaint asserts that "Plaintiffs Bankston, Pfeiffer, Johnston, and Thorne never requested back-up power service from Alabama Power" and that charging them for such service violates Section 292.305(b). Doc. 12 at ¶¶ 70, 80. Section 292.305(b) states that an electric utility shall provide back-up power upon the request of the QF. 18 C.F.R. § 292.305(b).[11] This is an "as-applied" challenge and not within this Court's jurisdiction because it contends unlawful conduct "as it applies to or affects an individual petitioner." *See Massachusetts Inst. of Tech.,* 941 F. Supp. at 237 (referencing *Greensboro Lumber*, 643 F. Supp. 1374).

In *Greensboro Lumber* (referred to as a "pure" as-applied claim in *M.I.T.*),[12] the plaintiff challenged the fairness of back-up power rates in an interconnection agreement as applied only to the plaintiff. 643 F.Supp. at 1374. The *Greensboro Lumber* plaintiff did not assert that the PURPA implementation plan was inconsistent "on its face" with FERC's regulations but rather asked the court to

---

[11] This motion regarding subject matter jurisdiction does not need to address whether the Plaintiffs actually requested such back-up service or whether FERC's regulations control how a QF makes such a request. However, the APSC does not concede that Plaintiffs did not actually make such requests.

[12] *Massachusetts Inst. of Tech.,* 941 F. Supp. at 237.

review the "dealings with a particular qualifying facility." *Id*.  The court declined

finding that it lacked subject matter jurisdiction over this "as-applied" claim.  *Id*.

Like the claims in *Greensboro Lumber*, Count 2 relates specifically to

dealings with the individual Plaintiffs.  To adjudicate this claim, the Court would

need to consider the terms of the separate interconnection agreements between the

individual Plaintiffs and Alabama Power.  These interconnection agreements are

distinct from the APSC's implementation plan and apply the requirements of the

APSC's implementation plan.  Because the dispute involves the application of the

implementation plan, rather than a claim concerning the implementation plan itself,

this is a pure "as-applied" claim outside of the jurisdiction of this Court.

In both *Greensboro Lumber* and Count 2 of the Amended Complaint, the

implementation plan itself is not at issue.  When the "underlying State-established

regulation is not at issue…. the application of a State-established rule [ ] would

properly lie before a State judicial forum of competent jurisdiction."   *Policy

Statement Regarding the Commission's Enforcement Role Under Section 210 of the

Public Utility Regulatory Policies Act of 1978*, 23 FERC 61304, 1983 WL 39627

(1983).  Because the APSC's implementation plan is not at issue in Count 2, this is

an as-applied claim over which this Court lacks subject matter jurisdiction.

### 2. Count 1: 18 C.F.R. § 292.305(a) and Count 3: 18 C.F.R. § 292.305(c)

While Count 2 involves interconnection agreements related to the application of Rate Rider RGB, Counts 1 and 3 attack the application of Rate Rider RGB to the Plaintiffs.[13] In Count 1, Plaintiffs assert that "Defendants' approval of the back-up power service charges [] constitutes a failure to implement 18 C.F.R. § 292.305(a)."[14] Doc. 12 at ¶ 67. Count 3 asserts that the APSC violated Section 292.305(c) by "allowing Alabama Power to base its charges for back-up power service upon factually unsupported assumptions about simultaneous forced outages of customer-sited solar equipment." Doc. 12 at ¶ 91.[15] These are "as-applied" challenges and not within this Court's jurisdiction because Rate Rider RGB could apply to customers without rooftop solar and who are not QFs. *See Massachusetts Inst. of Tech.,* 941 F. Supp. at 238 (finding that a complaint about a charge that could

---

[13] Some of the Plaintiffs (Bankston, Pfeiffer, and GASP) filed a complaint with the APSC regarding Rate Rider RGB (then Revision 5th) with similar assertions to Count 1, stating that the rates were "unfair, unreasonable, unjust, discriminatory and contrary to the public interest." Complaint with APSC ¶ 49. Those Plaintiffs filed that complaint pursuant to state law and referenced PURPA. *Id.* at ¶¶ 43, 46. Plaintiffs' first avenue for relief was the state regulator, suggesting their initial belief that this claim was an "as-applied" claim appropriate for a state forum.

[14] Rates for sales to QFs (such as for back-up power) shall be "just and reasonable… in the public interest; and… [s]hall not discriminate against any [QF] in comparison to rates for sales to other customers served by the electric utility." 18 C.F.R. § 292.305(a).

[15] Rates for the sale of back-up power "[s]hall not be based upon an assumption (unless supported by factual data) that forced outages or other reductions in electric output by all [QFs] on an electric utility's system will occur simultaneously, or during the system peak, or both." 18 C.F.R. § 292.305(c).

18

also apply to non-QFs is an as-applied claim not subject to a federal court's jurisdiction).

In *M.I.T.*, the plaintiff asserted that the Massachusetts Department of Public Utilities violated PURPA by approving a customer transition charge ("CTC") that was not just and reasonable and discriminated against QFs. *Id*. at 235. The CTC applied to "all former all-requirements customers that turned to alternate sources for their power needs." *Id*. The purpose of the CTC was to allow the utility to recover stranded costs – the "investment in existing facilities which may be unrecovered when a customer discontinues all-requirement purchases of power." *Id*. The *M.I.T.* Court found that the claim that the approval of CTC violated PURPA was "as-applied" because "CTC applies equally to all class customers, whether QF or not." *Id*. at 238 (stating that because the rate could apply to non-QFs, the claim was a "disagreement regarding the application" of the rate). The *M.I.T.* Court recognized that CTC only applied to the plaintiff at the time of the case but that the rate could by its design apply to non-QFs. *Massachusetts Inst. of Tech.,* 941 F. Supp. at 238.

Like the disputed rate in *M.I.T.*, Rate Rider RGB could apply to non-QFs. Rate Rider RGB applies to any "customers with non-emergency on-site generation interconnected and operating in parallel with [Alabama Power's] electrical system." Doc. 12 at ¶ 25. Because Rate Rider RGB could apply to non-QFs, Counts 1 and 3 are like the claim in *M.I.T.* – disagreements regarding the application of the rate.

Like the *M.I.T.* Court, this Court should find that Counts 1 and 3 are "as-applied" claims and should dismiss those claims for lack of subject matter jurisdiction.

*M.I.T.* recognized the general rule set out in *Greensboro Lumber* that PURPA limits federal court jurisdiction to claims of failure to devise an implementation plan "that is consistent on its face with FERC's regulations." *Massachusetts Inst. of Tech. v. Massachusetts Dep't of Pub. Utilities*, 941 F. Supp. 233, 237 (D. Mass. 1996) (quoting *Greensboro Lumber Co. v. Georgia Power Co.*, 643 F. Supp. 1345, 1374 (N.D. Ga. 1986), *aff'd*, 844 F.2d 1538 (11th Cir. 1988). Here, relevant to Counts 1 and 3, the Plaintiffs ask this Court to deconstruct the establishment of Rate Rider RGB to determine if the rates are just and reasonable, were derived from "accurate data and consistent systemwide costing principles," and are "based upon factually supported assumptions." Doc. 12 ¶¶ A, B, D.

This deconstruction of Rate Rider RGB requested by the Plaintiffs cannot be achieved by looking at Rate Rider RGB on its face. Rather, consideration of Counts 1 and 3 would require this Court's analysis of the step by step calculations involved in determining the appropriate rate. PURPA's intention likely was not for federal courts to get into the weeds of ratemaking. *See CED Red Lake Falls Cmty. Hybrid, LLC v. Minnesota Pub. Utilities Comm'n*, 2020 WL 780055, at *4 (D. Minn. Feb. 18, 2020) (stating that "[c]hallenges to the information an agency relies on to make a determination have been found to be as-applied challenges"). To evaluate whether

the APSC's implementation results in rates that are just and reasonable, this Court should limit its inquiry to whether the APSC has implemented procedures to establish a process that supports the development of fair rates.[16]  But, that is not what the Plaintiffs request.  Because the Plaintiffs request the Court to look beyond the face of the APSC's implementation plan, this Court does not have subject matter jurisdiction over those claims and should dismiss them.

**B.     Count 2 Fails to State a Claim for Which Relief Can Be Granted**

Count 2 of the Amended Complaint asserts that "Plaintiffs Bankston, Pfeiffer, Johnston, and Thorne never requested back-up power service from Alabama Power," that charging them for such service violates FERC rules, and that the APSC failed to implement FERC rules by allowing this charge.  Doc. 12 at ¶¶ 70, 80.  This claim is essentially that the APSC wrongfully allowed the back-up service charge to be applied to four individuals.

Presumably, the action that allowed the purportedly wrongful charge to these individuals is the APSC's approval of Rate Rider RGB.  But, neither the APSC's order approving Rate Rider RGB nor the rate itself address the specific applicability of the charge to these four people.  More specific to the claim, the APSC order did

---

[16] Such processes would include, inter alia, adequate notice, ability for intervention, public hearings, and cross examination.  The APSC has these processes in place as discussed in Background Section C.

not address whether these individuals requested back-up power service.[17]   The order

and the approved Rate Rider RGB indicate the general applicability of the rate.   The

Amended Complaint does not assert that the APSC addressed the specific

applicability to these four individuals.   Plaintiffs point to no APSC action "allowing"

this charge on these specific Plaintiffs; therefore, Count 2 does not contain sufficient

factual matter to state a claim to relief that is plausible on its face and this claim

should be dismissed.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (referencing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## C.    Plaintiff GASP Lacks Standing to Bring Claim Under Section 210

GASP, like the other Plaintiffs, asserts claims against the APSC pursuant to

PURPA Section 210.  The Amended Complaint indicates that GASP is a nonprofit

organization with "members adversely affected by the charges that Alabama Power

levies for supposed back-up power service."   Doc. 12 at ¶ 15.   However, the

Amended Complaint does not state that GASP is a QF or an electric utility.

Section 210 of PURPA limits the types of entities allowed to bring

enforcement challenges against a state regulatory authority to "[a]ny electric utility,

qualifying cogenerator, or qualifying small power producer."   16 U.S.C. § 824a-

---

[17] These individuals' complaint to the APSC did not include allegations that Alabama Power wrongfully provided a service that was not requested.  The APSC is the proper forum for such a complaint.  Since these individuals did not make this specific complaint, the APSC did not address this issue in its order denying the complaint and approving Rate Rider RGB.

3(h)(2); *see Vote Solar Initiative & Montana Env't Info. Ctr.*, 157 FERC ¶ 61080 (2016) (stating that "Vote Solar is not authorized to file a petition for enforcement pursuant to PURPA section 210(h)(2)(B), because it is neither a QF nor an electric utility"). To bring a Section 210(h)(2)(B) claim in this Court, Plaintiff must be authorized to petition FERC for enforcement. 16 U.S.C. § 824a-3(h)(2)(B) (stating that a petitioner to FERC may bring an action in the appropriate federal court if FERC does not act on the petition within 60 days of the filing). Further, no construct exists for "associational standing" under PURPA Section 210. Therefore, GASP is not authorized to bring a claim under Section 210 because it has not shown that it is either a QF or an electric utility. Because GASP lacks standing to bring a PURPA Section 210 claim against the APSC, the Court should dismiss GASP with prejudice.[18]

## Conclusion

For the reasons stated above, the Court should dismiss all claims asserted against the Alabama Public Service Commission in Plaintiffs' Amended Complaint (Doc. 12). In the alternative, the Court should dismiss Plaintiff GASP for lack of standing to bring a PURPA enforcement claim.

---

[18] GASP may argue that it has standing based on FERC's Notice of Intent Not to Act ("FERC Notice") that states "Petitioners may themselves bring an enforcement action against the [APSC] in the appropriate court." This argument does not have merit because FERC's Notice does not purport to take an opinion specifically on GASP's standing. Even if FERC's Notice did take an opinion on standing, the decision on standing belongs to this Court not to a federal agency. *Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 392 (5th Cir. 2014).

Respectfully submitted this 9th day of September 2021.

/s/ Luther D. Bentley IV
Luther D. Bentley IV (ASB-9981-R48B)
V. Chad Mason, Jr. (ASB-1331-Y21E)
Attorneys for Defendants
100 N. Union Street
Montgomery, Alabama 36104
(334) 242-5200
luke.bentley@psc.alabama.gov
chad.mason@psc.alabama.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Keith Johnston
Christina Tidwell
Southern Environmental Law Center
2829 2nd Avenue South, Suite 282
Birmingham, Alabama 35205
kjohnston@selcal.org
ctidwell@selcal.org
Attorneys for Plaintiffs GASP, Inc.,
Mark Johnston, and Teresa K. Thorne

Clay Ragsdale
Allison Riley
Ragsdale LLC
517 Beacon Parkway W.
Birmingham, Alabama 35209
clay@ragsdalellc.com
allison@ragsdalellc.com
Attorneys for Plaintiffs James H.
Bankston, Jr. and Ralph B. Pfeiffer, Jr.

Kurt Ebersbach
Southern Environmental Law Center
Ten 10th Street NW, Suite 1050
Atlanta, Georgia 30309
kebersbach@selcga.org
Attorney for Plaintiffs GASP, Inc.,
Mark Johnston, and Teresa K. Thorne

/s/ Luther D. Bentley IV
Luther D. Bentley IV