IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES H. BANKSTON, JR.,<br>et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:21cv469-MHT |
| | ) | (WO) |
| ALABAMA PUBLIC SERVICE | ) | |
| COMMISSION, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| ALABAMA POWER COMPANY, | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |

OPINION AND ORDER

After receiving a notice of intent not to act by
the Federal Energy Regulatory Commission (FERC), as
required to bring an action in federal court under the
Public Utilities Regulatory Policies Act of 1978
(PURPA), 16 U.S.C. § 824a-3(h), plaintiffs James H.
Bankston, Jr., and others broughts this PURPA
enforcement action against defendant Alabama Public
Service Commission and some of its officials (APSC).
On July 12, 2021, a month after receiving FERC's

notice, plaintiffs filed a complaint (Doc. 1) alleging that the APSC failed to implement PURPA's requirements in various ways through a tariff framework called Rate Rider RGB Revision Sixth (Revision Sixth). Thereafter, on August 2, 2021, plaintiffs filed the first amended complaint (Doc. 12), which also targeted Revision Sixth.

A month later, APSC filed a motion to dismiss (Doc. 19), and Alabama Power intervened as a defendant, also filing a motion to dismiss (Doc. 36). The motions were fully briefed.

Then, on November 5, 2022, the APSC approved Rate Rider RGB Revision Seventh (Revision Seventh), which would replace Revision Sixth--the revision denominated in plaintiffs' operative complaint.[1] Revision Seventh

---

1. *Rate Rider RGB Supplementary, Back-Up, or Maintenance Power Revision Seventh*, ALABAMA POWER (Nov. 5, 2021),
https://www.google.com/url?sa=t&rct=j&q=&esrc=s&source=web&cd=&ved=2ahUKEwiGpvTy2rj9AhXEElkFHXzjBI0QFnoECBIQAQ&url=https%3A%2F%2Fwww.alabamapower.com%2Fcontent%2Fdam%2Falabama-power%2Fpdfs-docs%2FRates%2FRGB.pdf&usg=AOvVaw0FL7vytCIBjHgvAJs9dFBs

was set to go into effect in April 2022.[2]

Five days after the passage of Revision Seventh, plaintiffs filed a motion for partial summary judgment (Doc. 41) while defendants' motions to dismiss remained pending. Defendants moved (Doc. 44 & Doc. 45) to stay plaintiffs' motion for summary judgment until the motions to dismiss were resolved. On September 8, 2022, the court granted defendants' motions to stay to the extent that all deadlines were stayed, and it denied plaintiffs' motion for summary judgment with leave to refile pending resolution of the motions to dismiss. *See* Order (Doc. 59).

Throughout this procedural history, neither of the parties raised any issues related to the effect of Revision Seventh on these proceedings. Indeed, Revision Seventh was in effect for over eight months

---

2. Notably, the parties now dispute whether Revision Seventh changes the nature of the case whatsoever; that is, plaintiffs argue that Revision Seventh is a nominal revision that does not impact their claims while defendants argue that Revision Seventh changes the case and controversy challenged by plaintiffs' operative complaint.

while defendants' dismissal motions pended, but defendants never objected or moved to dismiss the amended complaint on the basis that Revision Seventh, having superseded Revision Sixth, impacted the court's jurisdiction over this case.

However, on January 24, 2023, the court *sua sponte* raised the issue and ordered the parties to be prepared to discuss at oral argument on February 8, 2023, whether "the enactment of Rate Rider RGB Revision Seventh renders any of plaintiff's claims moot, and whether the amended complaint (Doc. 12) needs to be further amended to address Rate Rider RGB Revision Seventh." Order (Doc. 62).

The issue of mootness was taken up at oral arguments, and based on the representations of the parties, the court granted plaintiffs leave to file an amended complaint to address Revision Seventh, or to file a notice that they are proceeding on the first amended complaint, by February 22, 2023. *See* Order (Doc. 64). During oral argument, the court also

discussed the possibility of plaintiffs' filing a supplemental petition with FERC to address Revision Seventh. However, the court never determined whether petitioning FERC for a second time was required or necessary as jurisdictional matter.

On February 22, 2023, plaintiffs filed a notice of their intent to voluntarily file a supplemental petition with FERC, and then to amend the complaint to address Revision Seventh if FERC again declined to act. *See* Notice of Intent (Doc. 68). Plaintiffs requested that the court hold the pending motions to dismiss (which, again, do not raise any issues regarding the operation of Revision Seventh) in abeyance until FERC acts on their supplemental petition, which takes, at most, 60 days. *See id*.

A day later, defendants filed an objection to plaintiffs' proposal, arguing for the first time that the operation of Revision Seventh mooted plaintiffs' amended complaint, divested the court of jurisdiction, and that the court should dismiss the case outright,

arguably forcing plaintiffs to file a new case altogether when FERC acts on plaintiffs' second petition that targets Revision Seventh. *See* Response (Doc. 69).

At oral argument on February 27, 2023, defendants admitted that there is no on-point authority--that is, in the PURPA context--supporting their arguments that (1) the operation of Revision Seventh divested the court of jurisdiction, (2) that the case must be dismissed, and (3) that plaintiffs cannot be permitted leave to amend the complaint to address Revision Seventh, either before or after FERC acts on plaintiffs' supplemental petition. The supplemental petition was then filed on March 1, 2023. Notice (Doc. 73). (And again, it is unclear if plaintiffs were even required to go back to FERC, though they elected to do so out of an abundance of caution.)

Indeed, defendants' arguments that the court must dismiss now, instead of waiting 60 or so days at which point all mootness-related jurisdictional issues will

likely resolve, are especially interesting given that defendants were silent for eight months after Revision Seventh went into effect, implicitly indicating that, during that time, they saw no issue of jurisdiction related to the operation of Revision Seventh.

Regardless, as already discussed, defendants have not moved to dismiss on the basis that Revision Seventh moots the amended complaint and requires dismissal. Without such a motion, dismissal of this case on mootness grounds in the current posture would require the court to resolve, *sua sponte*, a heavily contested, complex issue that defendants have conceded lacks direct authority and will require the court to forge new legal ground. And, all the while, the issue could very well be mooted within 60 days (when FERC acts on the supplemental petition). Thus, if the court were to acquiesce to defendants' request at present, there is the reasonable possibility that it and the parties would unnecessarily expend considerable resources addressing a complex and arguably avoidable issue on an

expedited schedule.

Accordingly, in light of these multifactored considerations that involve, in large measure, strategic decisions on how to proceed, the court believes that whether to pursue this issue in its current posture should be presented to the court in a formal motion by a party, not just raised *sua sponte* by the court. If defendants wish to pursue the issue at this time, they must present it to the court in a formal motion, with plaintiffs then afforded an opportunity to respond. Otherwise, the court will simply wait and see if the issue resolves itself.

In the meantime, because the court finds that, at present, justice so requires under Federal Rule of Civil Procedure 15(a)(2), it is ORDERED that plaintiffs are granted leave to further amend, on or before May 12, 2023, the amended complaint to address Rate Rider RGB Revision Seventh.

DONE, this the 6th day of March, 2023.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE