**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| JAMES H. BANKSTON, JR. | ) | |
| RALPH B. PFEIFFER, JR. | ) | |
| MARK JOHNSTON, | ) | |
| TERESA K. THORNE | ) | |
| and GASP, INC., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | CASE NO. 2:21-CV-00469-MHT-SMD |
| ALABAMA PUBLIC SERVICE | ) | |
| COMMISSION; TWINKLE ANDRESS | ) | |
| CAVANAUGH, in her official capacity | ) | **COMPLAINT FOR DECLARATORY** |
| as President of the Alabama Public Service | ) | **AND EQUITABLE RELIEF** |
| Commission; JEREMY H. ODEN, in his | ) | |
| official capacity as Commissioner of the | ) | |
| Alabama Public Service Commission; | ) | |
| and CHRIS "CHIP" BEEKER, in his | ) | |
| official capacity as Commissioner of the | ) | |
| Alabama Public Service Commission, | ) | |
| | ) | |
| Defendants, | ) | |
| and | ) | |
| | ) | |
| ALABAMA POWER COMPANY, | ) | |
| | ) | |
| Intervenor-Defendant. | ) | |

**SECOND AMENDED COMPLAINT**

Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, Local Rule 15.1, and the

Court's March 6, 2023, Order (Doc. 74), Plaintiffs James H. Bankston, Jr., Ralph B. Pfeiffer, Jr.,

Mark Johnston, Teresa K. Thorne, and GASP, Inc., file this Second Amended Complaint to include

information about a subsequent revision to the rate rider at issue—Revision Seventh to Rate Rider

RGB, which was proposed by Alabama Power Company and approved by the Alabama Public Service Commission after Plaintiffs initiated this lawsuit. Plaintiffs also update certain factual information so that it is accurate as of the filing of the Second Amended Complaint.[1] Plaintiffs hereby allege as follows:

## SUMMARY OF ACTION

1.      This is an enforcement action pursuant to Section 210(h)(2)(B) of the Public Utility Regulatory Policies Act of 1978 ("PURPA"), 16 U.S.C. § 824a-3(h)(2)(B). Plaintiffs bring this action against the Defendants Alabama Public Service Commission ("Commission"), a state regulatory authority under PURPA, and Twinkle Andress Cavanaugh, Jeremy H. Oden, and Chris "Chip" Beeker, acting in their official capacities as Commissioners of the Alabama Public Service Commission, for their failure to implement requirements of PURPA that preclude regulated utilities from charging unjust and discriminatory rates for the sale of electricity to "qualifying facilities" ("QFs"), a category that includes customers who own solar generation.[2] Defendants have failed to implement PURPA by allowing Alabama Power Company ("Alabama Power" or "the Company") to charge unjust, unreasonable and discriminatory rates for "back-up power" service to Plaintiffs and other customers who own solar generation.[3] The back-up power charges unlawfully approved by the Defendants are stifling the growth of customer-sited solar across the

---

[1] Plaintiffs provide updated information on Alabama Power Company's total system capacity in footnote 7 and Rate FD's volumetric rates in footnote 12.

[2] PURPA uses the term "qualifying facility" to refer to small power production facilities that use biomass, waste, or renewable resources, including wind, solar and water, to produce electricity. 45 Fed. Reg. 12,214, 12,215 (Feb. 25, 1980) ("FERC Order No. 69").

[3] As discussed in more detail below, the charges are assessed pursuant to Alabama Power's Rate Rider RGB, which applies on top of the customer's underlying electric rate, such as Rate FD ("Family Dwelling"), which is Alabama Power's standard residential rate. Rate Rider RGB's terms, conditions and charges apply by virtue of the customer having installed on-site, non-emergency generation that is interconnected and operating in parallel with the Company's system.

lower two-thirds of Alabama served by Alabama Power. As a result, Alabama, despite its abundance of sunshine, lags almost every other state in the U.S. in customer-sited solar deployment.

2.      In 1978 Congress passed PURPA, a law intended to promote the development of small-scale renewable energy generation, including rooftop solar generation used by customers to offset and reduce purchases from their utility. PURPA prohibits utilities from engaging in price discrimination when buying or selling supplemental power from or to small energy producers. To that end, PURPA requires that the rates charged to such customers be just and reasonable and in the public interest, and that the rates not discriminate against them in comparison to rates for sales to other customers. 18 C.F.R. § 292.305(a). Congress recognized that without such a requirement, utilities could charge unreasonable or discriminatory rates to discourage customer investment in on-site renewable generation. *FERC v. Mississippi*, 456 U.S. 742, 750–51 (1982).

3.      As the state agency with regulatory authority over Alabama Power, the Commission is required to implement PURPA's protections, which it may do by issuing regulations, adjudicating disputes between qualifying facilities and their electric utilities, or any other action reasonably designed to implement PURPA's requirements. 45 Fed. Reg. 12,214, 12,236–37 (Feb. 25, 1980).

4.      The Defendants have failed to implement PURPA's requirements for just, reasonable and nondiscriminatory rates for sales by approving new charges for back-up power service to Alabama families, schools, and small businesses who invest in on-site solar to lower their consumption from the grid and reduce their electric bills. Then, in a dispute between Plaintiffs and Alabama Power over the new charges, the Defendants allowed Alabama Power to increase the

3

charges despite undisputed evidence that solar customers cost less to serve than customers without solar.

5.      As a result of Defendants' failure to implement PURPA's protections for Alabama Power customers, Plaintiffs and others like them pay more for the same amount of electric service than customers who reduce their electricity usage by other means, such as by installing energy efficient lighting or appliances. Such differential treatment is unjust and discriminatory under PURPA. The charges for back-up power service destroy the economics of private solar installations, robbing Plaintiffs and others like them of their expected savings and prolonging the payback period on their investments. These charges are the primary reason that private solar investment in Alabama Power's service territory, comprising most of Alabama, significantly lags that of other solar-rich states.

6.      Through this action, Plaintiffs ask the Court to compel Defendants to implement PURPA's rates for sales provisions for the protection of Alabama Power customers.

## JURISDICTION AND VENUE

7.      Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1331. Plaintiffs' claims for relief are provided by federal statute. 16 U.S.C. § 824a-3(h)(2)(B).

8.      Plaintiffs satisfied the prerequisites in 16 U.S.C. § 824a-3(h)(2)(B) for this lawsuit by petitioning the Federal Energy Regulatory Commission ("FERC") to enforce the requirements of 16 U.S.C. § 824a-3(f) and 18 C.F.R. § 292.305 on March 31, 2021. A copy of that petition is attached as Exhibit A. On June 1, 2021, FERC issued a Notice of Intent Not to Act (its customary practice in such situations), stating that "[o]ur decision not to initiate an enforcement action means that Petitioners may themselves bring an enforcement action against the Alabama Commission in the appropriate court." A copy of FERC's Notice is attached as Exhibit B.

9.      In a separate joint concurrence filed June 2, 2021, the Chairman of FERC, Richard Glick, and fellow Commissioner Allison Clements wrote to express their "concern that the Alabama Public Service Commission may be violating [FERC's] PURPA regulations, undermining the statute's purpose of encouraging Qualifying Facilities." The Chairman and Commissioner found that "Petitioners have presented a strong case that the Alabama Commission failed to adhere to the regulations set forth in FERC Order No. 69, violating the requirements of PURPA Section 210." A copy of the Joint Concurrence is attached as Exhibit C.

10.      Although Plaintiffs question whether they were required to do so, out of an abundance of caution and in order to avoid additional and unnecessary procedural arguments, Plaintiffs further satisfied the prerequisites in 16 U.S.C. § 824a-3(h)(2)(B) for this lawsuit by filing a supplemental petition for enforcement with FERC to specifically include information about a subsequent revision to Rate Rider RGB, Revision Seventh, on March 1, 2023. In the supplemental petition, Plaintiffs once again asked FERC to enforce the requirements of 16 U.S.C. § 824a-3(f) and 18 C.F.R. § 292.305, arguing that the Alabama Public Service Commission's implementation of PURPA is unlawful because it has approved back-up service charges that discriminate against solar customers—whether those back-up charges are assessed through Revision Sixth, Revision Seventh, or future revisions that similarly discriminate against solar customers. A copy of that petition is attached as Exhibit D.

11.      On April 28, 2023, FERC issued a Notice of Intent Not to Act on the supplemental petition, stating that "[o]ur decision not to initiate an enforcement action means that Petitioners may themselves continue their enforcement action against the Alabama Commission in the appropriate court." A copy of FERC's April 28, 2023, Notice is attached as Exhibit E.

12. In a concurring statement attached to the April 28, 2023, Notice of Intent Not to Act, FERC Commissioner Clements reiterated the concern that she and then-Chairman Glick expressed in response to Plaintiffs' initial petition for enforcement. She concluded that "none of the pleadings in this proceeding alter the conclusion that Chairman Glick and I previously expressed that this rate appears to violate the regulations set forth in FERC Order No. 69." Exhibit E at 3.

13. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because the Defendant Alabama Public Service Commission and the Defendants in their capacities as Commissioners of the Alabama Public Service Commission are located in this district and are in control of the state regulatory authority responsible for implementing PURPA in this district.

## PARTIES

14. Plaintiff James H. Bankston, Jr., M.D., is a residential customer of Alabama Power and the owner of a 1.86 kilowatt ("kW") rooftop solar photovoltaic ("PV") system, which is a "small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and a "qualifying facility" ("QF") under 18 C.F.R. § 292.203(a). Dr. Bankston interconnected his solar facility with Alabama Power's system in April 2016 and thereby became subject to monthly charges for back-up power service under Alabama Power's Rate Rider RGB. Dr. Bankston's principal place of business for his solar facility is in Tuscaloosa, Alabama.

15. Ralph B. Pfeiffer, Jr., M.D., is a residential customer of Alabama Power and the owner of a 3.36 kW rooftop solar PV system, which is a "small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and a QF under 18 C.F.R. § 292.203(a). Dr. Pfeiffer interconnected his solar facility with Alabama Power's system in April 2017 and thereby became

subject to monthly charges for back-up power service under Alabama Power's Rate Rider RGB. Dr. Pfeiffer's principal place of business for his solar facility is in Mobile, Alabama.

16.     Reverend Mark Johnston is a residential customer of Alabama Power and the owner of an approximately 6 kW ground-mounted solar PV system, which is a "small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and a QF under 18 C.F.R. § 292.203(a). Rev. Johnston interconnected his solar facility with Alabama Power's system in May 2017 and thereby became subject to monthly charges for back-up power service under Alabama Power's Rate Rider RGB. Rev. Johnston's principal place of business for his solar facility is in Double Springs, Alabama.

17.     Teresa K. Thorne is a residential customer of Alabama Power and the owner of a 4 kW rooftop solar PV system, which is a "small power producer" within the meaning of 16 U.S.C. § 824a-3(h)(2)(B) and a QF under 18 C.F.R. § 292.203(a). Ms. Thorne interconnected her solar facility with Alabama Power's system in September 2015 and thereby became subject to monthly charges for back-up power service under Alabama Power's Rate Rider RGB. Ms. Thorne's principal place of business for her solar facility is in Springville, Alabama.

18.     GASP, Inc. ("GASP") is an Alabama § 501(c)(3) nonprofit organization headquartered in Birmingham, Alabama and an Alabama Power customer. GASP's business address is 2320 Highland Avenue South, Suite 270, Birmingham, Alabama 35205. GASP seeks to improve the environment, economy and public health of Alabama. GASP has over 1,400 members in Alabama, including members adversely affected by the charges that Alabama Power levies for supposed back-up power service against on-site solar generating systems. GASP has associational standing to bring this action on behalf of its members who are QFs, including Plaintiffs Mark Johnston and Teresa K. Thorne. Increasing renewable energy opportunities in Alabama, which

includes protecting its QF members from discriminatory rates for electric service, is central to GASP's mission.

19.     The Defendants are the Alabama Public Service Commission and the Commissioners of the Alabama Public Service Commission. The Commission is a state agency charged with regulating the rates charged and services provided by public utilities in Alabama, including Alabama Power Company, the state's largest investor-owned monopoly utility, which serves some 1.45 million customers in Alabama. The Commissioners control the entity responsible for implementing PURPA's protections as to regulated utilities in Alabama, including the rates such utilities may charge for sales of electricity to QFs. 18 C.F.R. § 292.401(a). Defendants' address is 100 N. Union Street, RSA Union Building, Montgomery, Alabama 36104.

## LEGAL BACKGROUND

20.     Congress enacted PURPA to encourage Americans to develop renewable energy and reduce their dependence on traditional fossil fuels. H.R. Rep. No. 95-496(IV), 1978 U.S.C.C.A.N. 8454, 1977 WL 9621, at *14 (1978); *FERC v. Mississippi*, 456 U.S. at 750–51 (1982). To further that goal, PURPA prohibits electric utilities from charging discriminatory rates to customers who generate their own renewable energy. 16 U.S.C. §§ 824a-3(a), (c); *FERC v. Mississippi*, 456 U.S. at 750–51. Congress deemed such protection necessary to prevent utilities from using discriminatory rates to discourage and therefore undermine Congress's goal of increasing small power generation. Joint Explanatory of the Committee of Conference, P.L. 78-617, reprinted in *FERC Statutes and Regulations* ¶ 5151, at 5105–06; 45 Fed. Reg. at 12,228–29.

21.     Pursuant to Congress's goal of promoting small power generation, FERC adopted regulations prohibiting unreasonable and discriminatory rates for sales to customers with their own generation. Plaintiffs and others whose small power production facilities use solar to produce electric power are qualifying facilities ("QFs") under PURPA.

22.     FERC's implementing regulations satisfy Congress's mandate by requiring that rates for the sale of electricity to QFs "[s]hall not discriminate against any qualifying facility in comparison to rates for sales to other customers served by the electric utility." 18 C.F.R. § 292.305(a)(1)(ii). Rates for QFs may differ only if they are "based on accurate data and consistent systemwide costing principles" and do not differ from rates charged "to the utility's other customers with similar load or other cost-related characteristics." *Id.* § 292.305(a)(2).

23.     In its Order No. 69, FERC explained that its rates for sales requirements contemplate rate formation based on "traditional ratemaking (*i.e.*, cost-of-service) concepts" such that a self-generating customer should be charged the same rate applicable to a non-generating customer within the same class "unless the electric utility shows that a different rate is justified on the basis of sufficient load or other cost-related data." 45 Fed. Reg. at 12,228.

24.     Thus, to develop separate rates for QFs, a utility must rely on systemwide costing principles to show that the rate "charged to a comparable customer without its own generation is not appropriate," and thereafter, base any different rate for customer-generators "upon those data and principles." *Id.* Even then, however, "[t]he utility may only charge such rates on a nondiscriminatory basis," such that the QF "will not be singled out to lose any interclass or intraclass subsidies to which it might have been entitled had it not generated part of its electric energy needs itself." *Id.*

25.     As the state agency with regulatory authority over Alabama Power, the Commission is responsible for implementing PURPA's requirements governing rates for sales of electricity from regulated utilities to QFs.

26.    By approving Alabama Power's unjust and discriminatory charges for back-up power service under Rate Rider RGB, Defendants have failed to implement PURPA's rates for sales provisions set forth in 18 C.F.R. § 292.305.

27.    When state regulators like Defendants fail to implement FERC's regulations as required by law, owners of small renewable generation systems like Plaintiffs can request the district courts to compel proper implementation. *See* 16 U.S.C. § 824a-3(f) (requiring state regulatory authorities like the Commission to implement FERC's PURPA regulations), § 824a-3(h)(2)(B) (authorizing small power producers, following petition to FERC and its decision not to enforce, to initiate action in federal court to require state regulatory authority to comply with FERC's PURPA regulations; district court "may issue such injunctive or other relief as may be appropriate.").

## FACTUAL BACKGROUND

### The Commission Approved Unlawful New Charges on Customers with Solar Generation

28.    On December 20, 2012, Alabama Power filed with the Commission certain proposed revisions to its Rate Rider RGB. By its terms, Rate Rider RGB applies to all customers with non-emergency on-site generation interconnected and operating in parallel with the Company's electrical system. The rate rider includes the rates, terms and conditions for three services: Supplementary, Back-Up and Maintenance Power.

29.    A version of Rate Rider RGB has been on file with the Commission since early 1988. However, it was not until the changes filed on December 20, 2012—the so-called "Revision Fifth"—that Alabama Power proposed to begin assessing charges for "back-up power service"[4]

---

[4] Under PURPA, "back-up power" is electric energy or capacity supplied by an electric utility to replace energy ordinarily generated by a customer's own generation facility during an unscheduled outage of that facility. *See* 18 C.F.R. § 292.101(b)(9) (defining back-up power). It is different and distinct from "supplementary power," which is

against small customer generators taking service under the Company's standard residential tariff (Rate FD – "Family Dwelling"), alternative residential tariff (Rate RTA), standard school tariff (Rate SCH), and small commercial tariff (Rate LPS).

30.     Pursuant to Back-up Power Part I.B of the Revision Fifth, the Company would, for the first time, assess a "Capacity Reservation Charge" of $5.00 per kW against these customers for back-up power service. The charges would apply based on the size of the customer's self-generation equipment. For example, a customer with a 5 kW solar array would now owe the Company $25.00 per month for back-up service ($300 per year or $9,000 over the expected thirty-year lifespan of a typical system), in addition to mandatory fixed charges and charges based on the amount of electricity used by the customer.[5]

31.     The cover letter accompanying the Company's December 20, 2012 filing made no reference to the proposed new charges, instead describing the filing merely as "updates" that would "clarify the applicability of the rate rider, while expanding the number of rate options that are eligible to take service under the rider." The letter further described the revisions as including "updated rate definitions and service options to reflect changes in technology and system costs."

---

energy or capacity supplied by an electric utility that is regularly used by the customer in addition to that which the customer's own facility generates. *Id.* § 292.101(b)(8). Plaintiffs did not request back-up power service from Alabama Power and do not agree that it is a distinct service they need or should be required to pay for on top of paying fully for their supplementary power needs.

[5] Of the covered customer classes, only the Rate RTA customer could avoid the Capacity Reservation Charge, but only by opting to pay a 70¢ per kilowatt-hour ("kWh") charge ("Alternative Rate RTA Charge") during the weekday hours of 3:00 to 5:00 p.m. of the summer season, June through September (summer peak hours). Rate RTA is a time varying rate that includes a demand charge; the Alternative Rate RTA charge is more than three times the otherwise applicable rate under Rate RTA.

32.     The Commission approved the revisions just three weeks later. The Commission held no public hearing and received no testimony before approving the new charges, which its order made effective with May 2013 billings.[6]

33.     While the charges nominally apply to any form of non-emergency customer-sited generation, they were developed based upon solar production data and with the expectation that customer solar adoption was beginning to take root in Alabama.

34.     When the Commission adopted the new charges in May 2013, there were just 79 customer accounts subject to Rate Rider RGB (and those customers were exempted from the charges).

35.     As of November 2019, there were only about 132 customers subject to the charges, representing a total combined capacity of just over 650 kW (compared to total system capacity for Alabama Power of approximately 13,000 megawatts ("MW")).[7] By comparison, as of the filing of the initial Complaint (Doc. 1), sister utility Georgia Power Company, which assesses no charge for back-up power service, had more than twelve times the amount of on-site residential solar in its service territory than Alabama Power.

<u>Defendants Unlawfully Approved Increases to the Charges following Complaint</u>

36.     In April 2018, Plaintiffs Bankston, Pfeiffer and GASP filed a complaint with the Commission alleging that the charges assessed for back-up service were unfair, unreasonable, unjust, discriminatory, contrary to the public interest and otherwise unlawful under Alabama law ("the Commission Complaint Proceeding").

---

[6] Solar customers who had filed for interconnection prior to May 2013 were exempted from paying the new charges.

[7] Since the filing of this lawsuit, Alabama Power's total system capacity has grown to almost 16,000 MW, according to Alabama Power's Integrated Resource Plan Summary Report from 2022.

37.     Alabama Power responded by seeking to increase the Capacity Reservation Charge to $5.42/kW (later lowered to $5.41/kW due to an Alabama Power error) and the Alternative Rate RTA Energy Charge to 71¢/kWh.

38.     On November 21, 2019, Defendants held a limited hearing in which the Company's sole witness was cross-examined and the opportunity was then provided to cross-examine Plaintiffs' sole witness.

39.     In the Commission Complaint Proceeding, Alabama Power sought to defend the charges as necessary to fully recover the fixed (i.e., system infrastructure) costs associated with providing electricity to its customers. Rate FD is an "energy only" rate structure, meaning that Rate FD customers (who are most of Alabama Power's customers) pay for service—both the energy provided to them and the fixed system costs associated with providing it—primarily through a price per kWh charge applied to their electricity consumption. Alabama Power argued that without separate charges for back-up power service, it would be unable to fully recover its fixed system costs because solar customers consume less electricity from the grid and pay lower bills.[8]

40.     However, Alabama Power's own evidence showed that solar customers are less costly to serve than comparable customers without solar. The solar customer is less costly to serve from both a variable energy and fixed capacity (system infrastructure costs) perspective.

41.     In addition, the undisputed evidence showed that to the extent of their continuing need for electric service to supplement their system's production, solar customers pay fully for the

---

[8] On essentially the same basis Alabama Power defended the need to charge the same Capacity Reservation Charge to schools on Rate SCH and small businesses on Rate LPS, and the Alternative RTA charge to customers on Rate RTA. Plaintiffs Bankston, Pfeiffer, Johnston and Thorne are all Rate FD customers.

fixed costs associated with such supplementary service in the same way that non-solar customers pay for service generally—i.e., by the kWh.

42.    The undisputed evidence showed that the charges derive entirely from Alabama Power's assumed under-collection of revenue from solar customers because solar customers' private investments allow them to purchase less electricity from the utility. However, Alabama Power does not assess similar charges against customers who reduce their usage the same amount by means other than deploying on-site generation. For example, customers are not similarly charged for investing in energy efficiency improvements in their homes.

43.    Alabama Power admitted that it has no right to depend on any particular level of usage and corresponding revenue recovery from any customer, and that customers are free to reduce their electricity consumption from the utility without penalty.

44.    Alabama Power made no showing that solar customers' usage patterns fall outside the range that the Company anticipated and planned for when it designed Rate FD's consumption-based rate to fully recover fixed system costs from the Rate FD class as a whole, considering the diversity of usage patterns endemic to that standard residential class.

45.    Following the hearing, the parties submitted proposed orders. Despite the clear evidence that the charges have no cost-of-service basis and discriminate against customers who elect to reduce their energy usage by deploying small-scale solar, Commission Staff recommended that the Commission dismiss Plaintiffs' complaint and approve the increased charges for back-up power service.

46.    On October 16, 2020, the Defendants issued an Order adopting Staff's recommendation and giving effect to Alabama Power's requested increases. As a result, Plaintiffs Bankston, Pfeiffer, Johnston and Thorne are required to pay the increased monthly charges for

"back-up power service," a service they neither requested nor need, despite being less costly to serve. This version of Rate Rider RGB with the increased monthly charges was referred to as the Revision Sixth.

Defendants Unlawfully Approved Revision Seventh to Rate Rider RGB

47.     On October 15, 2021, after Plaintiffs initiated their lawsuit, Alabama Power filed with the Commission a new rate schedule, Rate FD-D (Family Dwelling – Demand), and revisions to Rate Rider RGB ("Revision Seventh"). Both proposals were approved by the Commission without modification 2.5 weeks later on November 2, 2021.

48.     Rate FD-D is a new, optional rate schedule for Alabama Power's residential customers. It is structured differently from the standard residential rate, Rate FD, on which the vast majority of Alabama Power's 1.3 million customers take service. Unlike Rate FD, which includes two components, a base charge and a volumetric energy charge (a price per kWh charge), the new Rate FD-D includes three components: a base charge of $14.50/month, a 7.3791¢/kWh volumetric charge, and a demand charge of $8/kW. The $8/kW demand charge is based on the customer's monthly maximum demand, measured during peak period hours (*i.e.*, the customer's maximum demand between 6:00-9:00 am from November through March and 1:00-5:00 pm from April through October). However, the demand charge is a *ratcheted* demand charge, meaning that the actual monthly demand charge is the greater of (1) the maximum demand measured during the peak period for the billing month or (2) 90% of the highest maximum peak period demand established during the previous eleven months. Thus, even if a customer's peak demand is low in one particular month, that customer still must pay 90% of the highest maximum peak period demand from the previous eleven months. Alabama Power's filing generally discusses the

15

methodology that it used to develop the rate, but Alabama Power did not attach any testimony or analysis (i.e., no cost-of-service analysis or calculations) to its proposal.

49.     At the same time it proposed Rate FD-D, Alabama Power also proposed revisions to Rate Rider RGB, known as Revision Seventh. In Revision Seventh, Alabama Power added the new Rate FD-D as a service option under the Supplementary Power and Part I.A of Firm Back-Up Power sections of Rate Rider RGB. If solar customers choose to take service on Rate FD-D, they are subject to its ratcheted demand charge. As noted above, the $8/kW ratcheted demand charge is based on a customer's peak demand from the previous eleven months, regardless of the customer's actual monthly kW demand in any given month. If solar customers take service on one of the rates listed in Rate Rider RGB Part I.B, such as Rate FD, which does not include a ratcheted demand charge, they must pay the charges for back-up power service. Either way, solar customers are discriminated against without basis because they must pay either the back-up power service charges or the ratcheted demand charge. Solar customers cannot opt to take service on Rate FD like all other residential customers (that is, *without* paying back-up power charges), despite the evidence showing that solar customers cost less to serve than customers without solar.

50.     Alabama Power did not propose and the Commission did not approve any revisions to the charges for back-up power service under Part I.B of Rate Rider RGB—the charges challenged in this case—as part of the 2021 Revision Seventh. Alabama Power did not modify the methodology, analysis, or calculations behind the charges, which continue to be based on the revisions that were proposed in Revision Sixth and approved by the Commission in October 2020. Solar customers who take service on Rates FD, LPS, or SCH must still pay the $5.41/kW Capacity Reservation Charge and solar customers who take service on Rate RTA must still pay the Alternative Rate RTA Charge. Plaintiffs Bankston, Pfeiffer, Johnston and Thorne, and others

similarly situated, continue to pay the charges for back-up power service each month. And Alabama Power and the Commission still treat solar customers as back-up service customers.

51.     The Commission's approval of Revision Seventh and its addition of Rate FD-D as an optional rate for residential solar customers does not cure its unlawful PURPA implementation. Revision Seventh to Rate Rider RGB carries forward the back-up power service charges as set out in Revision Sixth verbatim. Revision Seventh also carries forward the operative applicability language in the rate rider that requires back-up power service for solar customers. The Commission has unlawfully implemented PURPA since it first approved the charges in 2013 with Revision Fifth and then when it increased the charges in Revision Sixth. The approval of Revision Seventh continues that unlawful implementation. Likewise, any subsequent revisions to Rate Rider RGB that similarly discriminate against solar customers will also constitute an unlawful implementation of PURPA.

## COUNT ONE: FAILURE TO IMPLEMENT 18 C.F.R. § 292.305(a).

52.     Plaintiffs incorporate paragraphs 1 through 51 above.

53.     FERC's PURPA regulations require that rates for sales to QFs "[s]hall be just and reasonable and in the public interest" and "[s]hall not discriminate against any qualifying facility in comparison to rates for sales to other customers served by the electric utility." 18 C.F.R. §§ 292.305(a)(1)(i), (ii).

54.     Rates for sales are not discriminatory if "based on accurate data and consistent systemwide principles" and provided that "such rates apply to the utility's other customers with similar load or other cost-related characteristics." *Id.* § 292.305(a)(2).

55.     FERC has explained that its rates for sales requirements contemplate rate formation based on "traditional ratemaking (*i.e.*, cost-of-service) concepts" such that self-generating

customers should be charged the same rate as other customers in the same class "unless the electric utility shows that a different rate is justified on the basis of sufficient load or other cost-related data." 45 Fed. Reg. at 12,228.

56.     Alabama Power's monthly charges for back-up power service are not based on accurate data demonstrating that the rates charged to non-solar customers are inappropriate for solar customers because of a difference in electricity loads or costs.

57.     In fact, Alabama Power's own analysis underpinning the charges demonstrated unequivocally that solar customers are *less costly* to serve than customers without solar.

58.     In formulating the charges, Alabama Power did not evaluate the net usage[9] of Rate FD customers after adopting solar. The Company instead simply assumed that a "representative solar customer" would—as a result of their system's expected production—annually consume less utility-supplied electricity than the representative customer without solar.[10] The resulting difference in *revenue* to the utility—not any difference in *cost to serve*—is the true basis for the charges.

59.     Without evaluating net usage data, the Company lacked any basis for comparing solar and non-solar customers' loads and costs and failed to demonstrate that different rates are appropriate for solar customers due to a difference in loads and costs between solar and non-solar customers.

---

[9] Net usage means the customer's usage net of their solar system's production. Alabama Power does not measure the electricity produced by a customer's on-site solar installation; the Company only measures the customer's usage of grid-supplied electricity. Net usage is how the customer "appears" to Alabama Power after installing on-site solar—i.e., as a reduced usage customer.

[10] Specifically, the Company's analysis showed that the representative solar customer would consume 10,127 kWh annually instead of their assumed pre-solar consumption of 15,485 kWh, resulting in 5,358 fewer kWh sold. An average residential customer in Alabama consumes approximately 14,412 kWh annually, according to data from the U.S. Energy Information Administration (EIA).

60.     The charges for back-up power service have nothing to do with the actual usage patterns of solar customers, including their electricity demand during the peak hours that drive infrastructure costs.

61.     In developing the charges, Alabama Power had no information that solar customers were driving any specific infrastructure costs relating to interconnection and reliable operation of the grid.

62.     Alabama Power conceded that it has not had to incur any additional capacity costs specifically as a result of the extremely limited amount of customer-sited solar in its service territory.

63.     The back-up power service charges are based purely on *revenue decreases* that the Company anticipates from customer solar adoption, not from any *cost of service increase* for providing electric service to solar customers during unscheduled outages of solar equipment.

64.     In addition to lacking any basis in accurate data regarding cost to serve, Alabama Power's rates for back-up power service are not based on "consistent systemwide costing principles," as required by 18 C.F.R. § 292.305(a)(2).

65.     The charges require solar customers to pay significantly more for the same level of service than non-solar customers.

66.     Rate Rider RGB's back-up charges collect class demand[11] costs—which are common to QFs and non-QFs—differently, based on different pricing policies. A solar QF on Rate FD pays for class demand costs twice: once through the Capacity Reservation Charge under Rate

---

[11] Demand costs are those that vary with the kW demand imposed by the customer. They include such fixed system costs as the generation and transmission facilities needed to serve the customer class. They are categorically different from energy costs, which vary with the amount of energy, in kWh, consumed by the customer over the billing period. Rate FD is designed to recover both types of costs primarily through a volumetric energy rate – i.e., a rate applied against the number of kWh consumed by the customer. Under such a rate design, any customer reducing their usage pays less toward fixed system costs.

Rider RGB, and again through every kWh purchased under Rate FD's volumetric energy rate for their "supplementary service" needs. Meanwhile, non-QFs under Rate FD pay for class demand costs based solely on their volumetric energy usage.

67.     Hence, while all residential customers on Rate FD—with or without solar—pay the same rate for each kWh of electricity from Alabama Power,[12] and the same basic customer service charge,[13] only self-generating customers must pay an additional charge for "back-up power service."

68.     A charge may not single out QFs for different treatment if non-QFs in the same class have "similar load or other cost-related characteristics." 18 C.F.R. § 292.305(a)(2).

69.     As approved by Defendants, the Rate Rider RGB charges for back-up power service impose higher and additional charges for customers who self-supply some of their electricity needs with their own solar generation compared to customers who do not.

70.     By singling out self-generating customers for different treatment based on reduced usage (and not based on cost to serve), Alabama Power's charges for back-up power service are unjust, unreasonable and discriminatory.

71.     By unlawfully stifling customer solar development in most of Alabama, the charges are contrary to the public interest.

---

[12] As of the filing of the Second Amended Complaint, Rate FD assesses a charge of 12.2330¢/kWh for the first 1,000 kWh in the months of June through September and for the first 750 kWh in the remaining months of the year. For the summer months, the charge is 12.4859¢/kWh for all consumption over 1,000 kWh; for the remaining months, the charge is 11.0330¢/kWh for all consumption over 750 kWh. The Rate FD rates have increased since the filing of the Complaint (Doc. 1) and First Amended Complaint (Doc. 12); therefore, Plaintiffs have provided the updated rates.

[13] Rate FD assesses a base charge of $14.50 per month per customer.

72.     Defendants failed to require Alabama Power to provide data showing a difference in loads and costs by solar customers compared to non-solar customers, as was required to justify assessing a separate charge against them.

73.     Defendants also failed to require Alabama Power to base Rate Rider RGB's charges for back-up power service on consistent systemwide costing principles.

74.     The back-up power service charges assessed against solar customers are discriminatory under 18 C.F.R. § 292.305(a)(2) because they do not "apply to the utility's other customers with similar load or other cost-related characteristics."

75.     Defendants' approval of the back-up power service charges therefore constitutes a failure to implement 18 C.F.R. § 292.305(a). Rate Rider RGB Revision Seventh did not change and carries forward the back-up service charges levied on solar customers taking service on the rates set forth in Part I.B. of Rate Rider RGB.

## **COUNT TWO: FAILURE TO IMPLEMENT 18 C.F.R. § 292.305(b)**

76.     Plaintiffs incorporate paragraphs 1 through 75 above.

77.     FERC's PURPA regulations make clear that back-up power is an additional service to be provided by electric utilities "[u]pon request of a qualifying facility," and not as a matter of course. 18 C.F.R. § 292.305(b)(1). *See also* 45 Fed. Reg. at 12,215 ("These rules also provide that electric utilities . . . must provide certain types of services which *may be requested* by qualifying facilities to supplement or back up those facilities' own generation.") (emphasis added).

78.     Plaintiffs Bankston, Pfeiffer, Johnston and Thorne never requested back-up power service from Alabama Power. As preexisting customers, they simply sought to interconnect their systems to the grid, at which point they became subject to the Capacity Reservation Charge.

79.     When their systems do not generate electricity (e.g., at night), these Plaintiffs expect and are charged for supplementary service at the consumption-based rate otherwise applicable to customers in the Rate FD class.

80.     Unlike an industrial customer with large on-site generation, a residential solar customer is unlikely to experience forced outages (i.e., an unexpected failure of solar equipment) necessitating a separate arrangement with the utility to hold equivalent capacity in reserve. In the rare event in which a customer's solar array is unexpectedly inoperable, the customer resumes status as a full requirements customer, paying fully for the variable and fixed system costs occasioned by their usage through each kWh they consume from the grid.

81.     In contrast, solar customers do require supplementary power—defined as energy or capacity that a customer uses "in addition to" that which the customer generates on their own. 18 C.F.R. § 292.101(b)(8).

82.     By interconnecting their systems, Plaintiffs expected to remain Alabama Power customers and to pay for their supplementary power needs by the kWh in the same manner as other Rate FD customers.

83.     Back-up power serves a  different function.  It is designed to replace what the customer would ordinarily generate during an unscheduled outage of the customer's facility. 18 C.F.R. § 292.101(b)(9).

84.     Alabama  Power nevertheless views back-up power service as covering *all* reductions in on-site generation, including "unscheduled" outages associated with the absence of sunlight.

85.     Alabama Power's sweeping conception of back-up power service includes expected deviations in system output, which are the province of supplementary power service, and which the Company already accounted for in developing the charges.

86.     Alabama Power acknowledges that it would be inappropriate to assess back-up power service charges for supplementary power service. But the Company's failure to make a clear analytical distinction between the two services means solar customers are over-charged for supplementary power service.

87.     Plaintiffs should not have to pay for a service they did not request (and do not need) when the effect is to over-charge them for a service they do require—supplementary service.

88.     Defendants failed to implement 18 C.F.R. § 292.305(b) by allowing Alabama Power to assess charges for back-up power from Plaintiffs and others who did not request back-up power service and require only supplementary service. Rate Rider RGB Revision Seventh did not change and carries forward the operative "applicability" language in the rate rider that requires back-up power service for solar customers.

### COUNT THREE: FAILURE TO IMPLEMENT 18 C.F.R. § 292.305(c)

89.     Plaintiffs incorporate paragraphs 1 through 88 above.

90.     Under FERC's PURPA regulations rates for back-up power service "shall not be based upon an assumption (unless supported by factual data) that forced outages or other reductions in electric output by all qualifying facilities on an electric utility's system will occur simultaneously, or during the system peak, or both." 18 C.F.R. § 292.305(c).

91.     In its discussion of this provision, FERC noted that QFs exhibit diversity in size and load requirements. As a result, "an electric utility supplying back-up or maintenance power to

qualifying facilities will not have to plan for reserve capacity to serve such facilities on the assumption that every facility will use power at the same moment." 45 Fed. Reg. at 12,229.

92.     In supposed deference to this requirement, Alabama Power assumed that solar QFs across its service territory experience simultaneous forced outages 65% of the time. As a result, solar customers would receive credit for only 35% of the demand savings otherwise attributable to solar deployment. The effect of this assumption is that for every 10 kW of solar on the system, Alabama Power asserts it must hold 6.5 kW in reserve to cover simultaneous forced outages of solar equipment.

93.     Alabama Power provided no empirical support for that assumption but instead simply exercised its "informed judgment."

94.     The Company's "informed judgment" cannot lawfully substitute for the data-driven analysis of demand required by Section 292.305(c) of FERC's PURPA regulations.

95.     Even accepting Alabama Power's assumption that customer solar systems experience simultaneous forced outages 65% of the time, solar customers still produce capacity savings relative to non-solar customers within the same rate class. For every 10 kW of customer-sited solar, 3.5 kW of system capacity becomes available for use by other customers.

96.     In contrast, for a non-solar customer with a peak demand of 10 kW, the Company must be prepared to meet that 10 kW of demand at all times, including during system peak. Thus, even accepting the Company's assumption, it shows that self-generating customers cost less to serve because they allow the Company to hold less capacity in reserve to serve their needs.

97.     As a result, Alabama Power has not demonstrated that any separate charge for back-up power service against solar customers is justified.

98.     Any attempt by the utility to justify a separate charge for back-up power service (for customers who need and request such service) must be grounded in real-world data regarding simultaneous forced outages of customer-sited solar systems.

99.     Defendants failed to implement 18 C.F.R. § 292.305(c) by allowing Alabama Power to base its charges for back-up power service upon factually unsupported assumptions about simultaneous forced outages of customer-sited solar equipment. Alabama Power's assumption regarding forced outages did not change with the Commission's approval of Rate Rider RGB Revision Seventh.

<u>**REQUEST FOR RELIEF**</u>

Defendants' failures to implement 18 C.F.R. §§ 292.305(a), (b) and (c) are actionable under 16 U.S.C. §§ 824a-3(f) and (h)(2)(B).

WHEREFORE, Plaintiffs request that the Court order the following relief:

A.      Declare that by approving and allowing Alabama Power to impose the Rate Rider RGB charges for back-up power service, Defendants have failed to implement the requirements of 18 C.F.R. § 292.305(a)(1) that rates for sales to QFs be just, reasonable, in the public interest, and nondiscriminatory in comparison to rates for sales to other customers served by Alabama Power.

B.      Declare that by approving and allowing Alabama Power to impose the Rate Rider RGB charges for back-up power service, Defendants have failed to implement the requirements of 18 C.F.R. § 292.305(a)(2) that rates for sales be based on accurate data and consistent systemwide costing principles.

C.      Declare that by approving and allowing Alabama Power to impose the Rate Rider RGB charges for back-up power service, Defendants have failed to implement the requirements of 18 C.F.R. § 292.305(b) that back-up power is to be provided only upon request of a QF.

D.     Declare that by approving and allowing Alabama Power to impose the Rate Rider RGB charges for back-up power service, Defendants have failed to implement the requirements of 18 C.F.R. § 292.305(c) that rates for sales of back-up power service, assuming such service is needed and requested by the QF, must be based upon factually supported assumptions about simultaneous forced outages of customer-sited solar equipment.

E.     Order Defendants to implement 18 C.F.R. § 292.305(a) by requiring the same charges for utility-supplied electricity to solar and non-solar customers, unless and until Alabama Power can justify any different charges based on accurate data showing that the costs and usage of solar customers are outside the range of costs and usage of non-solar customers in the same class.

F.     Order Defendants to implement 18 C.F.R. § 292.305(a) by imposing only those rates for solar customers that are based on systemwide costing principles, such that similar loads and usage by solar and non-solar customers result in similar charges.

G.     Order Defendants to direct Alabama Power to immediately cease collecting the Capacity Reservation Charge and Alternative Rate RTA charges.

H.     Order Defendants to implement 18 C.F.R. § 292.305(b) by allowing Alabama Power to collect charges for back-up power service only from customers who specifically request such service.

H.     Order Defendants to implement 18 C.F.R. § 292.305(c) by requiring Alabama Power to furnish factual data supporting any assumptions about simultaneous forced outages of customer-sited solar equipment.

I.     Order Defendants to pay Plaintiff's attorneys' fees and costs to the extent provided by law.

J.     Order such other relief as the Court deems just and equitable.

26

Respectfully submitted this the 12th day of May, 2023.

/s/ Christina A. Tidwell
Christina A. Tidwell (ASB-9696-D10R)
Barry A. Brock (ASB-9137-B61B)
Southern Environmental Law Center
2829 Second Avenue S., Ste. 282
Birmingham, AL 35233
Tel.: (205) 745-3060
Email: ctidwell@selcal.org
    bbrock@selcal.org

Frank Holleman *(admitted pro hac vice, NC bar no. 43361)*
Southern Environmental Law Center
525 East Bay Street, Suite 200
Charleston, SC 29403
Tel.: (843) 720-5270
Email: fholleman@selcsc.org

Maia Hutt *(admitted pro hac vice, NC bar no. 53764)*
Southern Environmental Law Center
601 West Rosemary Street, Suite 220
Chapel Hill, NC 27516
Tel.: (919) 967-1450
Email: mhutt@selcnc.org

*Attorneys for Plaintiffs Mark Johnston, Teresa K. Thorne and GASP, Inc*

/s/ Clay Ragsdale
Clay Ragsdale (ASB-0308-A62R)
Allison Riley (ASB-0594-E28M)
Ragsdale LLC
517 Beacon Parkway W.
Birmingham, AL 35209
Tel.: (888)727-1087
Email: clay@ragsdalellc.com
    allison@ragsdalellc.com

*Attorneys for Plaintiffs James H. Bankston, Jr. and Ralph B. Pfeiffer, Jr.*

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Second Amended Complaint has been served upon the following by electronic filing on this 12th day of May, 2023:

*Attorneys for the Alabama*
*Public Service Commission*:
Luther D. Bentley IV
Email: luke.bentley@psc.alabama.gov
V. Chad Mason, Jr.
Email: chad.mason@psc.alabama.gov
ALABAMA PUBLIC SERVICE COMMISSION
100 North Union Street
RSA Union Building, Suite 802
Montgomery, Alabama 36104
Tel.: (334) 242-5200

*Attorneys for Intervenor-Defendant*
*Alabama Power Company*:
David R. Boyd
Email: dboyd@balch.com
Aria B. Allan
Email: aallan@balch.com
BALCH & BINGHAM LLP
105 Tallapoosa St., Suite 200
Montgomery Alabama 36104
Tel.: (334) 269-3159
Facsimile: (334) 269-3115

Scott Borden Grover
Email: sgrover@balch.com
Jason B. Tompkins
Email: jtompkins@balch.com
BALCH & BINGHAM LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203
Tel.: (205) 226-8781
Facsimile: (205) 488-5448

/s/ Christina A. Tidwell
*Of Counsel*