IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| JAMES H. BANKSTON, JR., et al., | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 2:21cv469-MHT (WO) |
| ALABAMA PUBLIC SERVICE COMMISSION, et al., | ) ) ) | |
| Defendants, | ) ) | |
| ALABAMA POWER COMPANY, | ) ) | |
| Intervenor-Defendant. | ) | |

OPINION AND ORDER

This case is about alleged price discrimination against small-scale solar-power production in Alabama. But the merits of that issue are not the focus of this opinion. Instead, this opinion primarily concerns whether federal courts can hear the case at all under the jurisdictional scheme established by the Public Utility Regulatory Policies Act (PURPA), an act that seeks to promote renewable energy production and charges the Federal Energy Regulatory Commission (FERC)

with prescribing rules to encourage cogeneration of energy and small power production. *See* Pub. L. 95–617, 92 Stat. 3117 (1978).

Plaintiffs James H. Bankston, Jr., Ralph B. Pfeiffer, Jr., Mark Johnston, Teresa K. Thorne, and GASP, Inc. filed this enforcement action pursuant to Section 210(h)(2)(B) of PURPA, 16 U.S.C. § 824a-3(h)(2)(B),[1] against defendant Alabama Public Service Commission (APSC).[2] The plaintiffs contend that the APSC failed to implement several PURPA regulations by requiring customers who generate their own solar

---

1. PURPA's provisions are generally referred to in the caselaw by their location in the original act rather than their codification in the code. While PURPA as a whole is codified at 16 U.S.C. § 824a, Section 210, the primary provision discussed here, is codified at 16 U.S.C. § 824a-3. The lettering of Section 210 maps to the code lettering. For example, Section 210(a) is 16 U.S.C. § 824a-3(a), Section 210(b) is 16 U.S.C. § 824a-3(b), and so forth.

2. The plaintiffs also name the APSC commissioners--Twinkle Andress Cavanaugh, Jeremy H. Oden, and Chris Beeker--as defendants in their official capacities. For ease of reference, when the court refers to the APSC, it is referring to both the Commission and the commissioners in their official capacities.

power to pay discriminatory, unsupported, and unneeded charges for backup power.  The APSC filed a motion to dismiss, challenging the court's subject-matter jurisdiction and arguing that one of the plaintiffs' counts fails to state a claim upon which relief may be granted.[3]

For the reasons that follow, the court denies this motion.

## I.  MOTION-TO-DISMISS STANDARD

The APSC brings a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Challenges to subject-matter jurisdiction under

---

3.  After the initial complaint was filed, Alabama Power Company moved to intervene to defend the APSC's actions, and that motion was granted without opposition.  Alabama Power also filed a motion to dismiss on largely the same grounds as those raised by the APSC, as explained in more detail in a later footnote.

Rule 12(b)(1) bifurcate based on whether the challenge is 'facial' or 'factual.' *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). When the party opposing jurisdiction brings a 'facial challenge' to subject-matter jurisdiction, the court determines jurisdiction based only on the allegations in the complaint, which it assumes are true. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013). In contrast, with "a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citation omitted). The APSC here raises a facial challenge to the subject-matter jurisdiction of the plaintiffs' claims; therefore, the court restricts its review of the facts to those alleged within the four corners of the complaint to determine if it has subject-matter jurisdiction.

**4**

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## II.  FACTUAL BACKGROUND

The facts, taken in the light most favorable to the plaintiffs, are as follows.  Four of the plaintiffs are residential customers of Alabama Power who own rooftop or ground-mounted solar photovoltaic (PV) systems, ranging from 1.86 to 6 kilowatts (kW).  Second Amended Complaint (Doc. 76) at 5-6.  The other plaintiff, GASP, Inc., is a non-profit organization that "seeks to improve the environment, economy and public health of

Alabama." *Id.* at 7.  Two of the individual plaintiffs are members of GASP, Inc.  *Id.*

The APSC is the Alabama regulatory authority tasked with regulating "the rates charged and services provided by public utilities in Alabama, including Alabama Power Company." *Id.* at 8.  In 2021, Alabama Power proposed "Revision Seventh" to Rate Rider RGB and the APSC approved it.  *See* Rate Rider RGB (Doc. 76-4) at 36.[4]  Rate Rider RGB provides the rate schedule, terms, and conditions for three services--supplementary power, backup power, and maintenance power--for all Alabama Power customers with "on-site, non-emergency electric generating capacity that operates in parallel with [Alabama Power's] system". *Id.*  These terms and rates apply to the four individual plaintiffs.  *See* Second Amended Complaint (Doc. 76) at 5-6.

---

4.  "[T]he district court may always consider exhibits attached to the complaint on a [motion to dismiss], because exhibits are part of the pleadings." *Basson v. Mortg. Elec. Registration Sys., Inc.*, 741 F. App'x 770, 770-71 (11th Cir. 2018).  Rate Rider RGB is an exhibit attached to the plaintiffs' second amended complaint; therefore, the court may consider it.

Rate Rider RGB allows Alabama Power to charge residential solar customers a backup-power fee called the "Capacity Reservation Charge". *See* Rate Rider RGB (Doc. 76-4) at 38. The Capacity Reservation Charge is based on the size of the customer's self-generation equipment. *See id.* It allows Alabama Power to assess a backup-power charge of $ 5.41 per kW, per month, against residential customers who generate some of their own electricity. *See id.* For example, a customer with a 5kW solar array is charged an additional $ 27.05 each month for backup power, or roughly $ 9,500 over the typical 30-year lifespan of a 5kW solar array. *See id.* This backup-power charge creates a disparity between customers who generate some of their own power and those who do not. While both sets of customers pay a fee that includes a base charge plus a volumetric charge based on their energy usage, customers who generate some energy must also pay the Capacity Reservation Charge. *See* Second Amended Complaint (Doc. 76) at 19-20.

Although the backup-power charges nominally apply to both customers with solar power and those with other types of non-emergency energy-generating equipment, the charges were "developed based upon solar production data and with the expectation that customer solar adoption was beginning to take root in Alabama." Second Amended Complaint (Doc. 76) at 12. The backup-power charges have no basis in cost and are "based purely on [Alabama Power's anticipated] *revenue decreases* ... from solar adoptions, not from any *cost of service increase* for providing electric service to solar customers." *Id.* at 19 (emphasis in original). "Alabama Power's own evidence showed that solar customers are less costly to serve than comparable customers without solar," and that "to the extent of [solar customers'] continuing need for electric service to supplement their system's production, solar customers pay fully for the fixed costs associated with such supplementary service in the same way that non-solar customers [do]." *Id.* at 13-14.

The effect of the backup-power charges is that the plaintiffs and other similarly situated customers "pay more for the same amount of electric service than customers who reduce their electricity usage by other means, such as by installing energy efficient lighting or appliances." Second Amended Complaint (Doc. 76) at 4.

Rate Rider RGB added an alternative option, Rate FD-D, for residential customers with or without energy-generating capacity. *See id.* at 15. Although Rate FD-D does not require payment of the Capacity Reservation Charge for customers who produce some energy, it includes a ratcheted demand charge on top of the base and volumetric charges. *See id.* The ratcheted demand charge is a "monthly demand charge that is based on the greater of (1) the maximum demand measured during the peak period for the billing month or (2) 90% of the highest maximum peak period demand established during the previous eleven months." *Id.* In other words, "if a customer's peak demand is low in

one particular month, that customer still must pay 90% of the highest maximum peak period demand from the previous eleven months." *Id.* While this rate scheme provides another option for residential solar customers, they still must pay an additional fee--either a demand charge under Rate FD-D or a backup-power charge under the standard residential rate--that residential customers without solar arrays can opt out of by selecting Rate FD, which does not charge such customers a fee beyond their actual energy usage. *Id.* at 16. Moreover, the complaint alleges, these extra charges for customers with solar power are unsupported because solar customers cost less to serve than customers without solar. *Id.*

Following the approval of Rate Rider RGB, the plaintiffs petitioned FERC to intervene and enforce PURPA's anti-discrimination requirements--a necessary prerequisite for federal jurisdiction.

After FERC declined the plaintiffs' supplemental petition to initiate an enforcement action against the

APSC, Notice of Intent Not to Act (Doc. 76-5),[5] the plaintiffs filed the second amended complaint in this federal district court.

### III.  LEGAL BACKGROUND

In 1978, Congress passed PURPA, a law designed in part to expand the use of renewable energy generation. *See New York v. F.E.R.C.*, 535 U.S. 1, 9 (2002).  To further that goal, Section 210 of PURPA prohibits electric utilities from charging unjust, unreasonable, and discriminatory rates to customers who generate their own renewable energy.  *See* 16 U.S.C. §§ 824a-3(a)

_____

5.  When the plaintiffs first petitioned FERC, asserting the same arguments as in their supplemental petition, the Chairman of FERC and a FERC Commissioner wrote a joint concurrence expressing their concern "that the [APSC] may be violating [FERC's] PURPA regulations, undermining the statute's purpose of encouraging" customer-sited renewable-energy production.  Second Amended Complaint, Exhibit C (Doc. 76-3).  The joint concurrence concluded that the "Petitioners have presented a strong case that the [APSC] failed to adhere to [Section 210(f)'s] regulations."  *Id*.  That position was reiterated by a FERC Commissioner when responding to the supplemental petition, which was filed after Revision Seventh to Rate Rider RGB.  *See* Second Amended Complaint, Exhibit E (Doc. 76-5) at 4.

& (c). Specifically, "PURPA prohibited utilities from engaging in price discrimination when they bought or sold supplemental power from or to small energy producers." *Vote Solar v. City of Farmington*, 2 F.4th 1285, 1287 (10th Cir. 2021). For example, "when a home or business with solar panels needs to buy extra power from [] the local utility, PURPA bars the utility from charging that home or business different rates than it would any other customer or supplier." *Id.*

Upon its passage, PURPA directed FERC to promulgate rules that would effectuate its anti-price-discrimination scheme. FERC issued such rules in 1980, largely echoing PURPA's mandates. *Id.* For example, FERC's rules require that rates for sales of power (1) "[s]hall be just and reasonable and in the public interest" and "[s]hall not discriminate against any qualifying facility in comparison to rates for sales to other customers," 18 C.F.R. § 292.305(a)(1)(i) & (ii) (mirroring Section 210(c)); and (2) "[s]hall not be based upon an assumption (unless supported by

factual data) that forced outages or other reductions in electric output by all qualifying facilities on an electric utility's system will occur simultaneously ... ." 18 C.F.R. § 292.305(c)(1).[6] 'Rates for sales' are considered nondiscriminatory if they are "based on accurate data and consistent systemwide costing principles" and "apply to the utility's other customers with similar load or other cost-related characteristics." 18 C.F.R. § 292.305(a)(2).

PURPA also provides an enforcement mechanism, and, with it, a jurisdictional framework. Section 210(a) directs FERC to issue the anti-price-discrimination rules required by Section 210(b). *See* 16 U.S.C. §§ 824a-3(a) & (b). Section 210(f) mandates that state regulatory authorities, such as the APSC, "implement" the rules issued by FERC under Section 210(a).

---

6. "Qualifying facility means a cogeneration facility or a small power production facility that is a qualifying facility under" 18 C.F.R. §§ 292.201 through 292.211. 18 C.F.R. § 292.101(b)(1). *See also* 16 U.S.C. § 824a-3(l); 16 U.S.C. § 796.

16 U.S.C. §§ 824a-3(f). While this scheme is straightforward, "[w]hat complicates ...[it] is the question this case demands [the court] answer: how--or, rather, where--the anti-price-discrimination requirement is to be enforced." *Vote Solar*, 2 F.4th at 1288.

The statutory text provides some guidance. If a state regulatory authority fails to meet its Section 210(f) obligations to "implement such rule[s] (or revised rule[s])," 16 U.S.C. § 824a-3(f), two jurisdictional subsections govern enforcement actions: Section 210(g) and Section 210(h).

Section 210(g) grants state courts jurisdiction to hear lawsuits brought (1) to obtain "judicial review [of] ... any proceeding conducted by a State regulatory authority or nonregulated electric utility for purposes of implementing any requirement of a rule under [Section 210(a)]" or (2) "to enforce any requirement established by a State regulatory authority or nonregulated electric utility pursuant to [Section

210(f)]."   16  U.S.C.  § 824a-3(g)  (citing  16  U.S.C.
§ 2633).

Section  210(h)  permits  any  electric  utility,
qualifying  cogenerator,  or  qualifying  small  power
producer to petition FERC to enforce a state regulatory
authority's  obligation  to  implement  FERC's  rules.
16 U.S.C. § 824a-3(h)(2)(B).  If FERC does not initiate
an enforcement action, the petitioner may bring suit in
federal  district  court  against  the  state  regulatory
authority  to  enforce  Section  210(f)'s  implementation
requirement.  *See* 16 U.S.C. § 824a-3(h)(2)(B).  (It is
undisputed that the individual plaintiffs in this case
are qualifying small power producers.)

In determining when federal jurisdiction is proper
under PURPA, most courts have applied an approach that
relies upon a distinction between "as-implemented" (or
"implementation") and "as-applied" claims.  Under that
approach,  federal  courts  are  understood  to  have
jurisdiction over implementation claims, while state
courts  must  hear  as-applied  claims.   Generally

15

speaking, implementation claims contend that a state regulatory authority failed to implement a FERC rule. *See Vote Solar*, 2 F.4th at 1288. In contrast, as-applied claims usually focus on whether a regulatory authority or utility "appl[ied] its own rules improperly to individual customers." *Id.* at 1290. The type of claim brought by the plaintiffs thus determines whether this court has jurisdiction. *See Power Resource Group, Inc. v. Public Utility Comm'n of Texas*, 422 F.3d 231, 234-35 (5th Cir. 2005).

Put differently, federal courts have jurisdiction over challenges to state regulatory rules that are unlawful as written, not rules that are lawful but applied unlawfully to individual customers. Unfortunately, determining whether a claim is an implementation claim or an as-applied claim "has long vexed utilities, qualifying facilities, state utility commissions, and even FERC itself." *Portland Gen. Elec. Co. v. F.E.R.C.*, 854 F.3d 692, 697 (D.C. Cir.

2017).[7]

PURPA's jurisdictional question is complicated, but two things are clear.   PURPA mandates that regulatory

---

7.   In making this determination, courts often consider, for example, whether the challenged regulation is of broad applicability to an identifiable class or specific to an individual customer.   When an individual brings a challenge to a rule or action that applies only to him, courts have viewed the lawsuit as raising an as-applied claim. *See Swecker v. Midland Power Co-op.*, 807 F.3d 883, 886 (8th Cir. 2015) (finding that the calculation of a specific avoided costs rate in an individual contract was an as-applied challenge); *CED Red Lake Falls Cmty. Hybrid, LLC v. Minnesota Pub. Utilities Comm'n*, No. 19-CV-1468 (NEB/LIB), 2020 WL 780055, at *4 (D. Minn. Feb. 18, 2020) (Brasel, J.) (dismissing the case for lack of subject-matter jurisdiction because Red Lake Falls' claim challenges how the Minnesota Public Utilities Commission set Red Lake Falls' avoided cost rate). However, when a "broad scope" of customers, or "class" of customers, are affected by the challenged state regulatory authority's rule, then the challenge is an implementation claim. *See Occidental Chem. Corp. v. Louisiana Pub. Serv. Comm'n*, 494 F. Supp. 2d 401, 410 (M.D. La. 2007) (Brady, J.) (finding a challenge to a "new methodology for calculating [a rate]" to be an implementation claim because the methodology impacted a "broad scope of entities"); *ConocoPhillips Co. v. Dep't of Water & Power, City of Los Angeles*, No. CV075742ABCJTLX, 2008 WL 11422174, at *4 (C.D. Cal. June 20, 2008) (Collins, J.) (finding an implementation claim where a challenged rate schedule discriminated against all cogeneration customers, not just the plaintiff).

authorities implement FERC rules, and it empowers federal courts to evaluate whether the regulatory authorities' implementation was successful. But if a regulator or utility applies a regulation improperly to individual customers, the customers must bring a claim in state court.

## IV.  DISCUSSION

The plaintiffs bring three counts under PURPA, asserting that the APSC failed to implement FERC's rules when it approved Rate Rider RGB's backup-power charges because those charges: (1) are based solely on Alabama Power's lost revenue and, therefore, are not just, reasonable, or in the public interest but rather discriminate against solar customers; (2) are mandatory for a class of customers, even though those customers do not in fact want, need, or even use backup power; and (3) are based on unsupported assumptions about electric output by solar customers.

The APSC's motion to dismiss advances two

overarching arguments. First, it contends that the federal judiciary lacks subject-matter jurisdiction to hear the plaintiffs' claims because they are as-applied challenges, and thus exclusively within the jurisdiction of the state courts under PURPA. Second, it asserts that, even if this court has jurisdiction over Count Two's mandatory backup charge, that count nonetheless fails to state a claim.

The court will take each argument in order and then address the standing of GASP. For the following reasons, the court finds that it has subject-matter jurisdiction at this stage, that Count Two states a plausible claim, and that GASP may remain in the litigation at this time.

Because the APSC raises a facial challenge to subject-matter jurisdiction, the standard of review limits the court's review to the four corners of the complaint. The court will assess jurisdiction based on the assumption that the well-pleaded facts in the complaint are true and will construe the facts in the

light most favorable to the plaintiffs.

### A.   Subject-Matter Jurisdiction

As discussed above, under PURPA's jurisdictional framework, federal courts have jurisdiction over claims that a state regulatory authority failed to implement FERC's PURPA rules.  *See* 16 U.S.C. § 824a-3(h).  Before discussing the specifics of each of the plaintiffs' claims, the court will first address arguments made by the APSC as to the viability of a challenge to the approval of rates for sales.

### 1.   Whether the Plaintiffs May Challenge a Rate Approval in Federal Court Under PURPA

The APSC makes two main arguments against the plaintiffs' claims.  First, it argues that its approval of Rate Rider RGB cannot be an implementation act because only the design of approval processes, not acts of approval, can be acts of implementation.  Second, it argues that a final retail-rate scheme like Rate Rider RGB can never be challenged in federal court due to

concerns about federal courts setting rates. The court finds neither argument persuasive.

The APSC argues that its approval of Rate Rider RGB is not the type of action that has a PURPA-implementing effect. As discussed earlier, FERC's 'rates for sales' regulations require that utility rates be just, reasonable, nondiscriminatory, and in the public interest. *See* 18 C.F.R. § 292.305(a)(1). Moreover, rates specific to qualifying facilities must be "based on accurate data and consistent systemwide costing principles" and apply similarly "to the utility's other customers with similar load or other cost-related characteristics" to be nondiscriminatory. 18 C.F.R. § 292.305(a)(2). If provisions within Rate Rider RGB are inconsistent with FERC's rules, as they are alleged to be, a challenge to the APSC's approval of Rate Rider RGB can qualify as an implementation claim.

According to the APSC, "the State of Alabama implemented FERC's rules through enactment of a statute and employment of a comprehensive rate approval

process." APSC Reply (Doc. 85) at 11. The APSC argues that, because Rate Rider RGB was derived from what it contends was a fair rate-approval process, the approval of Rate Rider RGB cannot be challenged in federal court. Thus, the APSC asks the court to "limit its inquiry to whether the APSC has implemented procedures to establish a process that supports the development of fair rates." APSC Brief (Doc. 82) at 20. In essence, the APSC argues, as long as the State made a reasonable attempt on the front end to implement FERC's rules, nothing the APSC does later can constitute a failure to implement those rules.

The APSC's process-oriented framework does not flow from the text of PURPA. In *Vote Solar*, the Tenth Circuit Court of Appeals reversed a district court for adopting a reasonable-attempt standard like the one proposed by the APSC. 2 F.4th at 1288. In that case, the district court had determined Section 210 jurisdiction by focusing on whether the state regulatory authority made "any reasonable effort at

implementation, rather than whether the implementation was successful or consistent with the FERC rule." *Id.* The Tenth Circuit rejected that attempt-based approach as unsupported by the plain meaning of the statute's text.  The court reasoned that "[t]he Oxford English Dictionary defines 'Implement' as 'To complete, perform, carry into effect (a contract, agreement, etc.); to fulfill (an engagement or promise).' ... Effort, good faith, or reasonable attempt play no role in the word's common usage or its dictionary definition.  Indeed, the district court's use of modifiers--'attempt to implement,' 'reasonable implementation efforts'--reveals the infirmity of its approach." *Id.* at 1289 (internal citation omitted).

In sum, under the APSC's approach, an approved rate could be inconsistent with PURPA's anti-discrimination provisions, but so long as that the approval followed certain procedures, no implementation claim could exist.  The court is not convinced.  As the Tenth Circuit observed, "[I]f a supervisor establishes

23

guidelines and tells an employee under supervision to implement them (picture here a doctor-nurse, architect-draftsman, judge-clerk situation), and due to a good-faith misunderstanding the employees fails to take the designated action despite making a reasonable attempt to do so, it can hardly be said that the employee has implemented the guideline action." *Id.*

Next, the APSC argues that its approval of Rate Rider RGB cannot serve as the basis of an implementation claim because federal courts cannot review the approval of a final retail rate, since doing so would devolve into "retail ratemaking." APSC Brief (Doc. 82) at 18.

While there is no doubt that federal courts lack rate-making authority to fix or calculate rates, the court concludes that PURPA provides federal courts the authority to hear challenges (and issue appropriate relief) when a regulator approves a rate scheme that is inconsistent with PURPA's 'rates for sales' provision. *See Allco Renewable Energy Ltd. v. Mass. Elec. Co.*, 208

**24**

F. Supp. 3d 390, 400 (D. Mass. 2016) (Saris, J.)
(invalidating a state regulatory authority's rate
program for failing to implement the "plain language of
the FERC regulations," but explaining that nothing in
PURPA provides federal courts with "rate-making
authority"), *aff'd,* 875 F.3d 64 (1st Cir. 2017). The
court reaches this conclusion for the following
reasons.

First, Section 210 authorizes federal review of
failures to implement FERC's 'rates for sales' rules.
*See* 16 U.S.C. § 824a-3(h)(2)(B); 16 U.S.C. § 824a-3(c).
Nowhere in the statute does it say that jurisdiction is
limited to challenges to the rate-setting approval
process. Instead, Section 210(h)(2)(B) is designed to
enforce prior subsections of Section 210, including
210(c), which demands that rates for sales by utilities
be just, reasonable, in the public interest, and
non-discriminatory. *See* 16 U.S.C. § 824a-3(c).

Second, federal courts have repeatedly found
jurisdiction in cases challenging rate schemes as

inconsistent with FERC regulations and issued decisions without wading into ratemaking. For instance, on materially similar facts, a district judge found federal jurisdiction under PURPA when the plaintiffs challenged "two rate schedules for the sale of electricity as contrary to the rate standards set by FERC in 18 C.F.R. § 292.305," the same FERC rule invoked here. *ConocoPhillips Co. v. Dep't of Water & Power, City of Los Angeles*, No. CV075742ABCJTLX, 2008 WL 11422174, at *3 (C.D. Cal. June 20, 2008) (Collins, J.); *see also Allco*, 208 F. Supp. 3d at 400 (invalidating a commission's rule that provided an unlawful basis for a rate scheme without getting into the specific rate-value calculations); *Winding Creek Solar LLC v. Peevey*, 293 F. Supp. 3d 980, 990 (N.D. Cal. 2017) (Donato, J.) (finding federal jurisdiction under PURPA and rejecting a pricing scheme that was burdened "with arbitrary rules," lacked a "reasoned basis," and "stray[ed] too far from basing prices on a utility's but-for cost"), *aff'd sub nom. Winding Creek*

*Solar LLC v. Peterman*, 932 F.3d 861 (9th Cir. 2019).

Moreover, in *New York State Elec. & Gas Corp. v. F.E.R.C.*, the U.S. Court of Appeals for the D.C. Circuit found: "The failure of a state commission to ensure that a rate does not exceed a utility's avoided cost is a failure to comply with a regulation implementing [] PURPA" and would therefore "be challenged through an enforcement action brought in district court under § 210(h)." 117 F.3d 1473, 1476 (D.C. Cir. 1997). Most recently, in *Vote Solar*, the Tenth Circuit reiterated that implementation, in the context of a backup-power charge like the one in this case, is not about whether a state regulatory authority "<u>tried</u> to ensure that the rate was lawful," but rather whether the rate "<u>was</u> lawful." 2 F.4th at 1289 (emphasis in original). All these cases find that implementation claims can be brought to challenge retail-sale rates of electricity without courts participating in setting the specific rates.

While concerns with federal courts setting rates

27

are well taken, these concerns do not justify departing from the statute by adopting a blanket rule that no final 'rates for sales' scheme approved by a state regulatory authority can ever be challenged in federal court for violating PURPA's anti-discrimination scheme and FERC's implementation mandate. *See id.* at 1290. Of course, this court is not a regulatory commission, and it lacks authority to fix retail rates under its remedial powers. But a court is not "ratemaking" by considering whether the approval of a rate scheme represents a failure to implement PURPA's 'rates for sales' provisions. *See Winding Creek,* 293 F. Supp. 3d at 994 (determining at summary judgment that the basis and methodology for a price rate failed to implement FERC's rules and was therefore invalid).

Accordingly, the court finds that the ASPC's approval of Rate Rider RGB is a regulatory action against which implementation claims can plausibly lie.


2. Whether the Plaintiffs Bring Implementation Claims

The next question is whether the plaintiffs have brought implementation claims against the APSC's Rate Rider RGB.

Count One asserts that the APSC, by enacting Rate Rider RGB, failed to implement 18 C.F.R. § 292.305(a), which requires that rates for sales to qualifying facilities "[s]hall be just and reasonable and in the public interest" and "[s]hall not discriminate against any qualifying facility in comparison to rates for sales to other customers served by the electric utility." 18 C.F.R. § 292.305(a)(1)(i) & (ii); *see* Second Amended Complaint (Doc. 76) at 17. (It is undisputed that the individual plaintiffs' solar arrays constitute "qualifying facilities" under the regulation.)

Rates for sales that are based on "accurate data and consistent systemwide costing principles shall not be considered to discriminate against any qualifying facility to the extent that such rates apply to the utility's other customers with similar load or other

cost-related characteristics." 18 C.F.R. § 292.305(a)(2). In other words, rates that are placed on customers who generate solar power, but not on regular customers without solar power, are discriminatory unless the rate is based on "accurate data and consistent systemwide costing principles." *Id.*

The plaintiffs plead that the backup-power service charges are "based purely on [anticipated] *revenue decreases* ... from solar adoptions, not from any *cost of service increase* for providing electric service to solar customers." Second Amended Complaint (Doc. 76) at 19 (emphasis in original). Instead of evaluating the net usage of customers who adopt solar generation, the plaintiffs assert, Alabama Power simply assumed a solar customer would consume less electricity annually; thus the "difference in *revenue* to the utility--not any difference in *cost to serve*--is the true basis for charges." *Id.* at 18 (emphasis in original).

Accepting the plaintiffs' allegations as true, the

APSC failed to implement FERC's 'rates for sales' rules when it approved a discriminatory rate scheme without any systemwide cost-of-service basis.  Because the plaintiffs have plausibly alleged that the APSC failed to implement 18 C.F.R. § 292.305(a) by approving the backup-power charges, this court has subject-matter jurisdiction over Count One.

Next, Count Two alleges that the APSC failed to implement 18 C.F.R. § 292.305(b) when it approved a rule that allows solar customers to be assessed a mandatory charge for backup power even when those customers do not need, want, use, or request backup power.  Based on the factual allegations in the complaint, Rate Rider RGB requires all customers who adopt solar power to pay an arbitrary charge for a service that those customers do not actually need, want, use, nor receive, and this charge discourages the adoption of solar power.  As such, Rate Rider RGB is inconsistent with PURPA's anti-discrimination scheme and FERC's rules.  *See* 18 C.F.R. § 292.305(b).  The

court has jurisdiction over Count Two.

Finally, Count Three asserts that the APSC failed to implement FERC's rules when it approved the backup-power charges because those charges are based upon "factually unsupported assumptions about simultaneous forced outages of customer-sited solar equipment."  Second Amended Complaint (Doc. 76) at 24 (citing 18 C.F.R. § 292.305(c)).  According to the facts in the complaint, Rate Rider RGB was based on an assumption, lacking empirical support, that solar-panel systems would face simultaneous forced outages (mainly, from cloud cover) 65 % of the time, requiring Alabama Power to hold 6.5 kWs for every 10kW solar system in capacity reserve.  *See id.*

FERC's 'rates for sales' regulations demand that backup or maintenance power rates "[s]hall not be based upon an assumption (unless supported by factual data) that forced outages or other reductions in electric output by all qualifying facilities ... will occur simultaneously, or during the system peak, or both."

32

18 C.F.R. § 292.305(c)(1).  If the discriminatory rate is not supported by factual data, then the rate scheme fails to implement a FERC rule.  *See id.*  The plaintiffs plausibly allege that the APSC approved a class-based rate of broad applicability without supportive data, the effect of which is to discriminate and discourage small-scale renewable energy in direct contravention to PURPA's purpose.  Therefore, the court has jurisdiction under PURPA over Count Three's claim of a failure to implement 18 C.F.R. § 292.305(c).

### B.  *Whether Count Two States a Claim*

As stated, Count Two alleges that the APSC failed to implement FERC's rules when it approved a mandatory backup-power charge against a class of customers who do not want, need, request, or even use such power.  In large part this claim turns on the definition of backup power.  *See* APSC Reply (Doc. 85) at 10 ("Plaintiffs' claim falls apart with the application of the correct definition of backup power rather than Plaintiffs'

misinterpretation of backup power."). The parties dispute (1) how to define backup power, and (2) whether the plaintiffs and others like them actually take that service, when properly interpreted.

The plaintiffs essentially contend that the term 'backup power' is the manufactured banner under which an arbitrary and discriminatory charge flies, while the defendants maintain that the plaintiffs are in fact receiving backup power, that they do in fact need it, and that the plaintiffs would essentially be getting a free, necessary service if Alabama Power were not able to charge them for backup power.

As the court has questions about the meaning of backup power that could be elucidated by factual development or expert testimony, the court exercises its discretion to carry this issue with the case. The motion to dismiss Count Two for failure to state claim will be denied with leave to renew the attack on this claim at the summary-judgment stage.

## C.   Whether GASP Has Standing

It is clear that the individual plaintiffs have standing to sue under PURPA because, as mentioned earlier, they are small power producers who can sue under the statute, and the rule they challenge directly impacts them.  Plaintiff GASP, in contrast, is not a small power producer who can sue under PURPA, but asserts that it has associational standing.

GASP is a nonprofit organization that "seeks to improve the environment, economy and public health of Alabama."  Second Amended Complaint (Doc. 76) at 7. "GASP has over 1,400 members in Alabama, including members adversely affected by the charges that Alabama Power levies against on-site solar generating systems for back-up service." *Id.*  Importantly, two of the residential plaintiffs, Johnston and Thorne, are members of GASP. *See id.*

Because it is undisputed that the individual plaintiffs, two of whom are members of GASP, have standing to bring this PURPA enforcement action, the

court need not decide whether GASP has associational standing to bring identical claims requesting identical relief. *See Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263-64 (1977) (explaining that the court need not determine whether a real-estate company had standing to bring claims on behalf of its prospective tenants because one of those tenants was a party to the suit with Article III standing to lodge an identical claim). "Nothing is gained or lost by the presence or absence" of GASP in this litigation. *Doe v. Bolton*, 410 U.S. 179, 189 (1973), *abrogated on other grounds by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).

Accordingly, the court finds that GASP should not be dismissed from the case for lack of standing at this time.


## V.  CONCLUSION

Based on the well-pleaded allegations in the complaint, the court currently finds that it has

36

jurisdiction over the plaintiffs' three claims under PURPA.[8]

\*\*\*

Accordingly, it is ORDERED that defendants Alabama Public Service Commission, Twinkle Andress Cavanaugh, Jeremy H. Oden, and Chris Beeker's motion to dismiss (Doc. 80) is denied.

---

8. Alabama Power also filed a motion to dismiss raising essentially the same grounds as the APSC, except Alabama Power sought to raise a factual challenge to the subject-matter jurisdiction over the plaintiffs' claims. Because the original parties agree that the APSC raises a facial challenge, the court analyzes the subject-matter jurisdictional attack as such. However, even if the court chose to address Alabama Power's factual challenge, the analysis would be identical. The court should not entertain a factual challenge at the motion-to-dismiss stage when the facts necessary to determine jurisdiction and the merits intertwine. *See Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). Instead, under such circumstances, the court should "limit its jurisdictional inquiry to facial scrutiny and reserve factual scrutiny for the merits." *Occidental Chem. Corp.*, 494 F. Supp. 2d at 405. In this case, the court finds the facts necessary to determine jurisdiction intertwine with the merits; thus, the court will delve into factual scrutiny once the facts have been further developed. Therefore, Alabama Power's motion to dismiss will be denied.

It is further ORDERED that intervenor-defendant Alabama Power Company's motion to dismiss (Doc. 81) is denied.

DONE, this the 30th day of September, 2024.

　　　　　　　　　　　/s/ Myron H. Thompson
　　　　　　　　　UNITED STATES DISTRICT JUDGE